## LINN & LANE TIMBER COMPANY *v.* UNITED STATES.

## SAME *v.* SAME.

### APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

Nos. 46, 159.   Argued January 27, 28, 1915.—Decided March 8, 1915.

This court follows the findings of fact of two courts below in this case that the corporation was a mere tool of the individual organizing and controlling it and holding most of its capital stock, that his knowledge as to the fraud was its knowledge, and that the corporation was a party to an effort to conceal the title until the period of limitation had expired. *McCaskill Co.* v. *United States,* 216 U. S. 504.

Where the corporation was organized simply to take title to lands and its first business was to record the deeds from the owners of practically all of its stock, and there is doubt as to whether they were actually delivered until then, the difference in legal personality between the grantor and the corporation gives the latter no greater rights than the former.

The fact that some third parties held stock of a corporation as collateral for debts of the principal stockholder *held* in this case, following the findings of the courts below, not to have altered the situation.

Where a secret transfer of wrongfully held land is made through the medium of a corporation for the purpose of busying the United States with the wrong person until the statute has run, service on the man thus put forward is sufficient to avoid the statute.

Where the bills to set aside patents for fraud have been filed and subpoenas issued and delivered for service before the statute has run, and reasonable diligence shown in getting service, the running of the statute is interrupted and the rights of the United States against the patents are saved.

Where the decision of the Secretary of the Interior that patents should be issued has been obtained by such fraud as existed in this case, it is

not conclusive; the matter is open for consideration by the courts. *Washington Securities Co.* v. *United States,* 234 U. S. 76. 196 Fed. Rep. 593; 203 Fed. Rep. 394, affirmed.

THE facts, which involve the right of the United States to cancel patents for land on the ground of fraud in the entries, and the application of the statute of limitations to the actions to cancel, are stated in the opinion.

*Mr. John Lind,* with whom *Mr. A. Ueland* and *Mr. W. M. Jerome* were on the brief, for appellants.

*Mr. Assistant Attorney General Knaebel,* with whom *Mr. Henry C. Lewis* was on the brief, for the United States.

*Mr. Joel F. Vaile* and *Mr. Henry McAllister, Jr.,* filed a brief as *amici curiœ.*

*Mr. Joseph Paxton Blair* and *Mr. Charles R. Lewers* filed a brief as *amici curiœ.*

MR. JUSTICE HOLMES delivered the opinion of the court.

These are suits in equity brought by the United States against the appellants to annul patents issued under the Timber and Stone Act of June 3, 1878, c. 151, 20 Stat. 89, on the ground that the entries were fraudulent. Both of the courts below have found that the entries were fraudulent, that the defendant Smith was either a party to the fraud or chargeable with notice of it, and that the Linn & Lane Timber Company stood in no better position than Smith. The Circuit Court of Appeals made decrees for the United States in respect of all the lands concerned. 181 Fed. Rep. 545. 196 Fed. Rep. 593; 116 C. C. A. 267. 203 Fed. Rep. 394; 121 C. C. A. 498. The main question here concerns the statute of limitations: "suits to vacate

and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." Act of March 3, 1891, c. 561, § 8; 26 Stat. 1095, 1099. See Act of March 3, 1891, c. 559; 26 Stat. 1093. In No. 46 the twenty-eight patents in controversy were issued on August 12, 1902. In No. 159, nine of the patents were issued on August 12, 1902, and eight on July 9, 1902. The bills were filed and subpœnas were taken out and delivered to the Marshal on May 25, 1908. On July 20 the Marshal returned *non est inventus.* as to Smith. An order of notice was applied for on the same day, suggesting that he was residing in Minneapolis, and was granted on July 27. Smith was served with process on August 11, 1908, and the corporation was made a party on November 16, and was served on November 18, 1908; so that it will be seen that the corporation was not brought into the suit until more than six years had run after the issue of all the patents and that Smith was served more than six years after the issue of eight of the patents involved in No. 159. On the other hand the bills were filed within six years.

The patented lands had been conveyed to various persons in trust for Smith in 1900, shortly after the making of final proof. In May, 1906, Smith, still having the equitable or legal title, organized a Minnesota corporation, the appellant, with 1000 shares of $100 each, for the purpose of receiving and holding the title to these and other lands. He took 998 shares, his wife one, and his attorney one. He then offered to pay for the stock with the land, and subsequently caused to be executed deeds purporting to convey the lands to the corporation, but he retained the deeds and did not have them recorded until September 9, 1908, after the beginning of these suits, and more than six years after the issue of the patents. It is found, it would seem reasonably, that one purpose of Smith was to keep the titles concealed until the statute of

limitations should have run.  The United States was ignorant of the transaction.  But a month from the recording of the conveyances to the corporation Smith and other defendants pleaded it in abatement, and in November, as we have said, the United States filed amended bills.

Upon the facts as found by the two courts below we must take it that the corporation was the mere tool of Smith, that his knowledge was its knowledge, *McCaskill Co.* v. *United States,* 216 U. S. 504, and that it was party to an effort to keep the title concealed until it was too late for the United States to complain.  It even is open to some doubt whether the deeds ever were delivered until they were recorded, and it seems open to none that, as was said by the Circuit Court of Appeals, recording the deeds was the first business the corporation did.  This being so, the difference in legal personality between Smith and the corporation gives the corporation no greater rights than Smith.  It cannot be privy to a fraud and on the ground of its success set up a title of which, if that be material, Smith is to have substantially the whole advantage, and thus defeat the adjudication against Smith that otherwise would undo the fraud.  There is no question of creditors' rights and the only ground for hesitation is that before the bill was filed some of the shares had been pledged by Smith, and fifteen shares had been transferred to one Johnson and also pledged for Smith's debt.  But we are of opinion with the findings that the position was not changed as between the United States, Smith and the corporation in such a way as to give the last a better standing in this case.  Those who took the stock as security did not deal with the corporation as outsiders, but became a part of it while it still was under the manifest domination of Smith and charged with participation in Smith's fraud.  The corporation cannot derive any new right from them.  *Wilson Coal Co.* v. *United*

*States*, 110 C. C. A. 343; 188 Fed. Rep. 545. Whether they have a remedy is not a question here.

We now are not considering the effect of a fraudulent concealment of a cause of action. We are considering whether a man who knows that his title is bad and will be attacked can call into being a corporation which he owns, in order to save the property, make a deed to it, put the deed into his pocket, leave it unrecorded and, without the need of trusting even an accomplice, can keep it with perfect security until the statute has run, and then set up that his creature owns the land. We are deciding that if a secret transfer of wrongfully held land is made in this way for the purpose of busying the United States with the wrong person until the title shall be made good by time, service on the man thus put forward is sufficient to avoid the statute and the trick must fail.

The bills were filed and subpœnas were taken out and delivered to the Marshal for service before the statute had run, reasonable diligence was shown in getting service and therefore the rights of the United States against all the patents were saved. For when so followed up the rule is pretty well established that the statute is interrupted by the filing of the bill. *Coppin* v. *Gray*, 1 Y. & C., C. C. 205, 207. *Purcell* v. *Blennerhassett*, 3 Jo. & Lat. 24, 45. *Forster* v. *Thompson*, 4 Dr. & Warr. 303, 318. *Hele* v. *Lord Bexley*, 20 Beav. 127. *Hayden* v. *Bucklin*, 9 Paige (N. Y.), 512. *Aston* v. *Galloway*, 38 No. Car. 126. *Dilworth* v. *Mayfield*, 36 Mississippi, 40, 52. *United States* v. *American Lumber Co.*, 85 Fed. Rep. 827, 830. *United States* v. *Miller*, 164 Fed. Rep. 444.

There was an attempt made in argument to reopen the questions of fact upon which the two courts below agreed, but we see no reason to depart from the common rule and therefore we do not advert to any of those matters. It also was argued that the decision of the Secretary of the Interior that the patents should be issued is conclusive.

But the decision was obtained by such frauds that the matter was open for reconsideration by the courts. *Washington Securities Co.* v. *United States,* 234 U. S. 76.

*Decrees affirmed.*

Mr. Justice McReynolds took no part in the consideration or decision of these cases.