### NORMA MINING CO. v. MACKAY.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1917.)

1. EVIDENCE ⬤⟹177—BEST AND SECONDARY EVIDENCE—CORPORATE RECORDS.

While the records of a corporation are the best evidence of the action of its directors or stockholders, in the absence of such record, parol testimony may be introduced to show that a resolution was passed authorizing corporate action.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 557, 570–579.]

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2.** CORPORATIONS ⟨⟩482(5)—MORTGAGES—WEIGHT AND SUFFICIENCY OF EVIDENCE.

On the issue in a foreclosure suit as to whether a corporation was indebted to its president, evidence *held* to support a finding that a note and mortgage executed to a person to whom the president was indebted was sustained by an adequate consideration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1870.]

**3.** CORPORATIONS ⟨⟩482(7)—MORTGAGES—CONSIDERATION.

A corporation, indebted to its president, who owed plaintiff $13,000, executed its note and mortgage to plaintiff for $16,000, which was credited on its indebtedness to its president. Plaintiff gave the president a receipt, reciting that the note and mortgage were to be sold, $10,000 paid on the president's debt to him, and the balance paid to the president. The efforts to sell the note and mortgage were unsuccessful, and subsequent transactions between plaintiff and the president increased the president's indebtedness to plaintiff to $16,000. *Held*, that the corporation, having received credit in the sum of $16,000 on its indebtedness, was not concerned in the subsequent transactions between plaintiff and the president, and they did not prevent a recovery against defendant for the full amount of the note.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1883–1886.]

**4.** CORPORATIONS ⟨⟩432(12)—OWNERSHIP OF STOCK—EVIDENCE.

In a suit to foreclose corporate mortgages, claimed by the corporation to have been executed by its president without consideration and not for a corporate purpose, evidence *held* sufficient to warrant a finding that by reason of stock ownership the president was in effect the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1737, 1743, 1762.]

**5.** CORPORATIONS ⟨⟩182—MORTGAGES—LOOKING BEHIND CORPORATE FORM.

Where, of the 300,000 shares of stock in a corporation, 1 was issued to the corporation's president, 1 to his son, and 1 to the secretary, but not delivered, and a certificate for the remaining shares was owned either by the president or his wife, who knew of the execution of a mortgage by him and made no objection thereto, the court could look beyond the corporate form, and hold the mortgage binding on the corporation, because binding on the persons composing it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 686–690.]

**6.** DEPOSITIONS ⟨⟩88—USE IN EVIDENCE—EXCLUDING PORTIONS OF DEPOSITIONS.

Where an order for the taking of a deposition first applied for during the trial limited the scope of the inquiry to a particular matter, it was within the court's discretion to exclude testimony as to other matters, as it was within its discretion to determine in the first instance whether any deposition whatever could be taken during the trial.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 234–236½, 242–245.]

Appeal from the District Court of the United States for the District of Arizona; Wm. H. Sawtelle, Judge.

Suit by Hugh Mackay against the Norma Mining Company. From a decree in favor of plaintiff, defendant appeals. Affirmed.

The appellee brought suit to foreclose two mortgages on the property of the appellant, a corporation of the state of Arizona. The first mortgage was executed on August 2, 1913, and was given to secure a promissory note of the appellant for $16,000. The second mortgage bore date March 31, 1914, and was given to secure the sum of $5,000, evidenced by two promissory notes of the appellant, one for $3,500, and the other for $1,500. Each mortgage con-

tained the recital that it was executed and delivered by R. T. Root, as president, by order of the board of directors of the appellant, and by order of the stockholders at a meeting at which all the shares of the stock were represented and unanimously voted in favor thereof. The second mortgage contained the further recital that there was a prior mortgage on said property, executed by the appellant to the appellee to secure $16,000 and some taxes, "all of which the grantor will pay." To the complaint the appellant answered, denying that the president of the corporation was authorized to execute said notes and mortgages, and alleging that the same, if executed, were out of the course of the appellant's regular business, and without consideration, and that they had never been ratified. The answer then alleged that at the time of the execution of the first mortgage the appellee was in need of money and requested the said Root to assist him, by giving him notes or securities upon which he could raise money, and that the said Root, without authority or knowledge of the board of directors of the appellant, and without any consideration, executed in the name of the corporation and conditionally delivered said $16,000 note and mortgage, and that the $5,000 note and mortgage were executed by Root upon personal matters and dealings between him and the appellee, and had no relation to any business or interest of the appellant, and were without consideration moving to the appellant, and were without its knowledge or authority and were conditionally delivered to the appellee. Upon these issues and the evidence in the case, the court found that the appellant, for a valid consideration, executed and delivered both of said mortgages and the notes secured thereby, that the said mortgages are valid and subsisting liens against the mortgaged premises, and that there is due and owing to the appellee from the appellant upon the first mortgage the sum of $18,434.66, and upon the second mortgage $4,523.43.

Richard E. Sloan, of Phœnix, Ariz., for appellant.

Baker & Baker, of Phœnix, Ariz., and Robinson & Robinson, of Denver, Colo., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the finding that the notes and mortgages are valid obligations of the appellant is erroneous: First, because of failure of proof that Root, the president, was authorized to execute the same; and, second, because of failure of proof that any corporate purpose was served thereby, or that any consideration was received therefor. The records of the appellant contain no mention of authority to execute either of the notes or mortgages. There was parol evidence, however, that meetings were had for that purpose, and that both at meetings of the board of directors and at meetings of the shareholders, representing all the stock, the execution of the notes and mortgages was duly authorized. There was some testimony to the contrary, but we find no ground to disturb the conclusion of the trial court upon the conflicting evidence. As to the first mortgage, the finding is corroborated by a paper which was inserted in the record book, and which contains the minutes of a meeting of the stockholders and a meeting of the directors of the appellant in July, 1913, signed by the secretary of the company, reciting that all shares were represented, and containing the following:

"Whereas, the Norma Mining Company owes R. T. Root the sum of more than $25,000 for moneys advanced and expended upon its White Hills, Arizona, property, and desires to secure and pay the same:

"Resolved, that the officers of the company be and they are hereby authorized to issue and deliver to Hugh Mackay, at the request and for the account of R. T. Root, the note or notes of the company up to an aggregate of $25,000, and to secure the same by mortgage or mortgages upon all of the mines and property of the company; * * * that such notes and mortgages shall be of such dates and form, and contain such terms and conditions, as said R. T. Root and said Mackay may hereafter agree upon, and that said notes and mortgages, when executed, shall apply and be credited upon the indebtedness of the company to said Root, and said indebtedness canceled to the extent of such notes and mortgages."

[1] While the records of a corporation are the best evidence of the action of its directors or stockholders, in the absence of such records, parol testimony may be introduced to show that a resolution was passed authorizing corporate action. United States Bank v. Dandridge, 12 Wheat. 64, 6 L. Ed. 552; Denver & R. G. R. R. v. Ariz. & Col. R. R., 233 U. S. 601, 34 Sup. Ct. 691, 58 L. Ed. 1111; Allis v. Jones (C. C.) 45 Fed. 148.

[2] The conclusion of the court below that the execution of the notes and mortgages was sustained by an adequate consideration is sufficiently supported by evidence tending to show that at the date of the execution of the first mortgage the appellant was indebted to R. T. Root in the sum of about $30,000. The appellee testified that, at the meeting at which the first mortgage was authorized, Root stated that the company owed him approximately $30,000, and said, "I don't know the exact figures, but Mr. Lowry there does," and that he further stated that "no one on earth could find fault" with any mortgage that was issued to him "to the extent of that amount." Although Root, when called as a witness for the appellant, denied that the company was indebted to him, his evidence, we think, is substantially an admission that there was such an indebtedness. He testified:

That he did not charge up to any one the outlay and expenses which he paid for the operation of the mining company. That he kept a record of some expenses, "but I do not recall to have made any charge. I keep no account between myself, of the expenses that I paid in the operation of the Norma Mining Company, and the company. I claim and hold no account against the Norma Mining Company in the sum of about $30,000 for expenses and outlays in behalf of the company. * * * It was expenses on the property, not the company, for the development of the property. There was parties interested, whose money I used—I procured and used on the property, opening the property. I refer to my wife. She had furnished money which was used."

Lowry, who had been the secretary, testified:

"Any money that was expended on that property was to be repaid. It was merely entered upon the books as an account, showing what expenditures had been made, between Mr. Root, making the expenditures, and the corporation. It was regarded at all times as an indebtedness of the corporation to him."

Lowry further testified that he presumed the books containing the entries of these expenditures were in Root's possession.

[3] At the time of the execution of the first mortgage, and as a part of that transaction, the appellant gave to Root a receipt reciting that the note and mortgage were received for the purpose of selling them, and from the proceeds to pay the appellee $10,000 due for money

which he, as the executor of an estate, had loaned to Root, and to pay the balance of the proceeds to Root. It is contended that the decree is erroneous in finding that there was due the appellee under the first note and mortgage any more than the sum of $10,000, which was to be paid to him. The evidence indicates that the appellee was extremely anxious to obtain the payment of the $10,000 trust funds, which as executor he had loaned to Root, and the testimony shows that strenuous efforts were made, both by the appellee and by Root, to sell the first note and mortgage; Root being anxious to obtain the surplus that might be realized on the mortgage. Their efforts resulted in failure, but the evidence shows that, at the date when the mortgage was executed, Root was in fact indebted to the appellee in the full sum of $13,000, and that for the remaining $3,000 the appellee, on August 30, 1913, gave Root a duebill, and that thereafter certain indebtedness on promissory notes executed by Root in November, 1912, to the appellee, and money received by Root on the sale of certain bonds belonging to the appellee, were applied to the extinction of the duebill, leaving the amount secured by the first mortgage the full sum of $16,000. These transactions between Root and the appellee subsequent to the date of the mortgage can have no effect upon the rights of the appellant in the present controversy, for the appellant at the time of the execution of the mortgage received credit in the sum of $16,000, and the cancellation in that amount of its indebtedness to Root, and, so far as the corporation was concerned, that was the purpose for which the mortgage was executed.

[4, 5] Again, the trial court may have found, and we think it would have been justified in finding, that R. T. Root was in effect the corporation. There were 300,000 shares. One share was issued to R. T. Root, one to his son, and one was made out to Lowry, but not delivered. A certificate of 299,997 shares had been issued to one McDermott, and he had indorsed it in blank. The appellee testified that, just prior to the execution of the first mortgage, Root stated that he owned every share of stock, and that he exhibited the shares. Lowry testified that, at the meeting at which the mortgage was authorized, Root said that he owned all the shares of the corporation outside of the directors' shares, and produced certificates signed in blank. Griermann, a disinterested witness, testified that on July 28, 1913, Root told him that, in order to avoid the possibility of any technical objection on the part of the party who might want to make the loan, he had the resolution passed, although he did not consider it necessary, because he owned all the stock. Root testified that the shares belonged to his wife. But there is the testimony of two disinterested witnesses that, prior to the mortgage, Mrs. Root knew of the purpose to procure money on the mortgage, and expressed her hope that the effort might be successful, and Root admitted that his wife learned of the mortgages soon after they were given. There is no evidence that she ever made objection to them. In view of such testimony, a court may properly look beyond the corporate form and hold that what would be binding upon the persons composing the corporation would be binding upon the corporation. Linn Timber Co. v. United States, 236 U. S. 574, 35 Sup. Ct.

440, 59 L. Ed. 725; Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267, and cases there cited.

[6] It is contended that the trial court erred in striking from the deposition of Mrs. Root certain portions of her testimony. It appears that when, during the trial, application was made to take Mrs. Root's deposition, the court, in view of the statement of appellant's counsel that they had been taken by surprise by the testimony as to certain conversations had by witnesses with Mrs. Root, permitted the deposition to be taken, but ordered that the interrogatories be confined to questions concerning those conversations with Mrs. Root. When the deposition was offered in evidence, it appeared that Mrs. Root had testified on other subjects, and the court, referring to the order that had been made, sustained objections to the admission of such other testimony. The order having limited as it did the scope of the inquiry, it was within the court's discretion to exclude the other testimony, since it was within its discretion to determine in the first instance whether any deposition whatever could be taken during the progress of the trial. 13 Cyc. 865.

The decree is affirmed.