**EQUITABLE LIFE ASSUR. SOC. OF U. S. v. SCHWARTZ et al.**

No. 5751.

Circuit Court of Appeals, Fifth Circuit.

July 23, 1930.

Crate D. Bowen and Joseph F. McPherson, both of Miami, Fla. (Shutts & Bowen, of Miami, Fla., on the brief), for appellant.

Robert R. Milam, of Jacksonville, Fla., E. T. McIlvaine, of Miami, Fla., and A. Y. Milam, of Jacksonville, Fla., for appellees.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

FOSTER, Circuit Judge.

Appellant filed a bill in equity to cancel a policy of life insurance issued by it to Julius Moskovitz for $25,000, with his minor sons, Nathan and Joseph, as beneficiaries.

The policy contained a clause making it incontestible after one year from its date of issue. The application, part I, contained the following clause: "I hereby agree that the policy issued hereon shall not take effect until the first premium has been paid during my good health. * * * All of the foregoing answers and all those made to the Society's Medical Examiner, which are contained in part II hereof, are true, and are offered to the Society as an inducement to issue the policy for which application is hereby made." The application, part 2, which was filled out and signed before the examining physician, contained this clause: "I agree that the foregoing answers shall be part of my application, which shall consist of Parts I and II taken together, and that the foregoing answers shall also become part of any policy contract that may be issued on the strength thereof." The policy contained this clause: "This policy and the application therefor, a copy of which is endorsed herein, or attached hereto, constitute the entire contract between the parties. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall void this policy or be used in defense of a claim thereunder unless contained in the written application therefor. * * * "

The bill was filed a few days before the limitation had run and service of subpœna was made thereafter. As grounds for canceling the policy, the bill alleged, in sub-

stance: (1) That Moskovitz had stated in his application that the only physicians that he had consulted or who had treated him during the five years preceding his application were Dr. Pittman of West Palm Beach, Fla., for a cold, in October, 1925, and Dr. Aronovitz of Jacksonville, for erysipelas, in September, 1924, and that he had concealed the fact that he had been treated by Dr. Van Landingham of West Palm Beach, Fla., for arterio sclerosis with attendant high blood pressure; that he had falsely represented that he had never had or been treated for any disease or disturbance of the genito urinary organs and had never had syphilis; and (2) that Moskovitz was not in good health at the time the policy was delivered to him and the first premium paid, which fact was discovered on or about August 23, 1926. The answer denied the material allegations of the bill and asked for affirmative relief.

The District Court, as appears from an opinion in the record, reached the conclusion that the insured was not guilty of fraud, and therefore the answers to the questions in the application were to be treated as representations and not warranties; that the bill was founded upon these false answers rather than upon the condition of good health at the time of delivery of the policy and payment of the first premium and did not pass upon the second ground of nullity urged in the bill. He further found that the suit had not been begun within the limitation. Judgment was rendered in favor of H. L. Schwartz as guardian of the beneficiaries for the face of the policy, $25,000, with accrued interest amounting to $6,202.76, and a solicitor's fee of $3,500 was allowed, making a total of $34,702.76.

■■ We may, of course, review the evidence and render such judgment as may be just and proper. The evidence was taken out of court before a commissioner. Therefore we consider it with as much light as the District Court had. There is some conflict, but a clear preponderance supports the following conclusions as to the material facts: Moskovitz made application for the insurance January 6, 1926, and appeared before the medical examiner January 13, 1926. The policy was delivered March 26, 1926. Moskovitz was treated by Dr. Van Landingham in August, October, and November, 1925, and after that in March, 1926, for Bright's disease with attendant high blood pressure and also for minor digestive disturbances. The physician did not disclose to Moskovitz the seriousness of his condition until March 3, 1926, because Mrs. Moskovitz had informed him that her husband would worry a great deal and asked him not to tell him. This was before the policy was delivered. After that Moskovitz consulted Dr. Brillhart on the 5th or 6th of April, only a few days after the policy was delivered. He complained of stomach trouble and the history of his case that he gave Dr. Brillhart was that he had been feeling ill for some months. He told Dr. Brillhart that he had been treated by Dr. Van Landingham for Bright's disease and by Dr. Pittman for diabetes with apparent relief. Dr. Brillhart found that he had a very much enlarged heart and that he had a large mass in the upper right quadrant of his abdomen which he diagnosed as a syphilitic gumma, which diagnosis was confirmed the next day by a Wasserman test which showed positive and an X-ray examination of the stomach. He was put to bed and given absolute rest, treated with digitalis for his heart and salvorsen for his syphilitic condition, and he apparently made an uneventful recovery. After that, about June 2, 1926, he consulted Dr. Stone. He was found suffering from an acute dilation of the heart and was cyanotic and his liver was enlarged. He told Dr. Stone that Dr. Van Landingham had diagnosed his condition as Bright's disease and that he got progressively worse; that he thought he had better get some insurance; that he did get it and passed the examination. Dr. Stone found no evidence of Bright's disease, but there may be some doubt as to whether the specimen he examined was authentic. Dr. Van Landingham at times acted as medical examiner for the insurer, but it is not shown that he had any knowledge of Moskovitz's application or that any one connected with the company knew of his treatment of Moskovitz.

There is no doubt that Moskovitz concealed the fact that he had been treated by Dr. Van Landingham very shortly before his application. Considering that he thought to mention two physicians who had treated him one and two years before that for slight ailments, the presumption may be indulged that he did so deliberately. Undoubtedly this was a material false representation. If he had mentioned Dr. Van Landingham, it is probable that inquiry would have been made of that doctor. Had it been disclosed that he had been treated for Bright's disease and an enlarged heart, the policy would not have been issued. As to this the testimony is positive. As the answers were material and known to the insured to be false, no further

proof of fraud was necessary. Furthermore, there could be no doubt that Moskovitz knew he was in bad health at the time the policy was delivered to him. It was his duty to disclose that fact to the insurer and he made no effort to do so. This ground of nullity was sufficiently pleaded and was not abandoned. On either ground urged, appellant was entitled to a judgment canceling the policy and requiring its return. N. Y. Life Ins. Co. v. Price (C. C. A.) 16 F.(2d) 660; N. Y. Life Ins. Co. v. McCarthy (C. C. A.) 22 F.(2d) 241; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895.

■ The Conformity Act (28 USCA § 724) has no application to proceedings in equity in the federal courts, and therefore the statute of Florida cited by the District Court is also without effect, as the limitation relied upon was created by the contract and not by the law of Florida.

■ The Supreme Court of the United States is authorized to adopt rules of practice in equity to govern the lower federal courts. 28 USCA § 723. The Equity Rules of 1912 provide: That the process of subpœna shall constitute the proper mesne process in all suits in equity, in the first instance, to require the defendant to appear and answer the bill (rule 7 [28 USCA § 723]); it is to be issued by the clerk, as of course, whenever a bill is filed (rule 12 [28 USCA § 723]); and is to be served by the marshal of the district, or his deputy, or by some other person specially appointed by the court for that purpose (rule 15 [28 USCA § 723]). These rules govern the initial issuance and service of process in federal courts.

It appears that the bill was filed in the office of the clerk in the Miami Division of the District Court, within which the defendants resided, on February 12, 1927, two days before the limitation had expired, and on that day a subpœna to all defendants was issued by the clerk, through a deputy clerk. Thereafter the bill and the subpœna were transmitted by the deputy clerk to the Jacksonville office of the clerk and on February 14, 1927, the subpœna was sent to the marshal at Miami to execute and return. The subpœna was delivered to the marshal at Miami for service on February 15, 1927, and on February 18th it was served personally upon the beneficiaries and their mother, as administratrix of the estate of her husband. The marshal was unable to locate H. L. Schwartz, the guardian of the minors, within the Miami

Division, and the subpœna was sent to Tampa, Fla., where it was received on February 25, 1927, and was served personally, at Sanford, Fla., on March 2, 1927, on Schwartz, as guardian of the minors. Due return was made on the subpœna.

A suit in equity is commenced when the bill is filed and process is issued, where the process is subsequently served. Farmers' Loan & Trust Co. v. Lake Street Elevated R. R. Co., 177 U. S. 51, 20 S. Ct. 564, 44 L. Ed. 667; Linn & Lane Timber Co. v. U. S., 236 U. S. 574, 35 S. Ct. 440, 59 L. Ed. 725; Armstrong Cork Co. v. Merchants' Refrigerating Co. (C. C. A.) 184 F. 199; Mound City Co. v. Castleman (C. C. A.) 187 F. 921. There may be an exception to this rule where the plaintiff is guilty of laches in procuring the issuance and service of process, or does not honestly intend to prosecute the suit, but that does not appear here. All that the plaintiff was required to do in instituting the suit was to file the bill with the clerk in the proper district and division and that was done. Thereafter, the process was promptly issued and was served by the marshal as soon as was practicable and within a reasonable time. As the bill was filed and process issued within the contestible period the suit was in time.

The judgment appealed from is reversed, and the cause is remanded, with instructions to enter judgment in favor of plaintiff and appellant canceling the policy, and for such other relief as may be required, in conformity with this opinion.

Reversed and remanded.