In the Matter of Walter J. KASSUBA et al., Debtors.

WALTER J. KASSUBA REALTY CORPORATION et al., Plaintiffs,

v.

Kenneth V. HEMMERLE and Hemmerle Development Corp., Defendants.

Bankruptcy No. 76–380–Bk–JE–B.

United States District Court, S. D. Florida.

March 11, 1981.

William Rodriguez, Fort Lauderdale, Fla., Michael Nifong, Miami, Fla., for Hemmerle Development Corp.

Steven H. Friedman, Miami, Fla., for Walter J. Kassuba.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

This matter is a procedural novelty which began in January, 1975, when the Bankruptcy Court for the Northern District of Illinois, Eastern Division, transferred to this court three actions pending in the State court. The order reached this court in March, 1976. (C.P. No. 1). Kassuba, a Chapter XI debtor in Illinois, was a party in each case. The State court complied with the court order and forwarded the three files to this court.

The matters were tried here and judgment was entered in February, 1980, for Kassuba in the amount of $698,353 against Hemmerle Industries, Inc., and Kenneth V. Hemmerle (hereafter identified as Hemmerle Sr.). (C.P. Nos. 283A, 284A, 289A, 292A). Execution was returned nulla bona in May. (C.P. No. 305A).

B.R. 769 authorizes supplementary proceedings in aid of a judgment "in accordance with the practice and procedure of the state in which the district court is held." Section 56.29, Florida Statutes, governs that procedure in this State. Under authority of subsection 56.29(6)(b), the judgment creditor, Kassuba, has filed a complaint in this court against the judgment debtor, Hemmerle, Sr., and Hemmerle Development Corp., a Florida corporation, which was not a party to the original litigation. (C.P. No. 386A).

The complaint unfortunately was styled Hemmerle V. Kassuba, the style of the litigation which produced the money judgment instead of reflecting the present posture of the parties. That style has been followed by both parties until now. However, in the hope that I will avoid rather than compound confusion, the style of this present action (an adversary proceeding under B.R. 701) is now corrected to reflect the actual posture of the parties.

Florida law is controlling, *House of Koscot Dev. Corp. v. American Line of Cosmetics, Inc.*, 5 Cir., 468 F.2d 64, 66, and the complaint has been tried as though it were an action in the State court. *Ryan's Furniture Exchange v. McNair*, 1935, 120 Fla. 109, 162 So. 483. If there have been any procedural niceties omitted in the effort to adapt Florida practice to the mechanics of this court, I am satisfied that neither party has been prejudiced.

The complaint charges that between December 3, 1975 and April 30, 1976 Hemmerle Sr. transferred over $700,000 worth of assets to Hemmerle Development Corp., hereafter identified as HDC, in order to place those assets beyond the reach of his creditors. Kassuba proceeds under § 726.01, Florida Statutes, which voids conveyances made with intent to delay, hinder or defraud creditors, unless the conveyance was for good consideration to a party without notice. Kassuba also alleges that HDC is the alter ego of Hemmerle.

HDC has answered. (C.P. No. 410A). Hemmerle Sr. filed no answer but appeared at the trial. I presume that he adopts the answer of HDC. The matter was tried before me on January 27 and argument was heard on February 10.

This order incorporates findings and conclusions as authorized by B.R. 752(a).

### Fraudulent Transfers

■ On March 26, 1979 Hemmerle Sr. deposited in the Century Bank of Broward to the credit of HDC $360,000. On June 1, 1979, he deposited $497,497 in the same bank and also to the credit of HDC. Each of these sums, in the form of checks payable to Hemmerle Sr., was received from Bramalea Corporation, a Delaware corporation, which agreed to pay the total sum for quit claim deeds from both Hemmerle Industries and Hemmerle Sr. conveying certain real property in Palm Beach County. These are the transfers which Kassuba claims to be fraudulent. The transfers occurred three years after the time alleged in the complaint. However, Kassuba's motion to amend its pleadings to conform to the evidence is granted under authority of B.R. 715, which incorporates by reference Rule 15(b), Fed.R.Civ.P.

Hemmerle Sr.'s explanation of these deposits is that neither he nor Hemmerle Industries had any interest in the property; that the checks were not in payment for the quit claim deeds; and that they were in payment to HDC for services. I reject this explanation for several reasons.

The two quit claim deeds were executed by Hemmerle Industries and Hemmerle Sr., not HDC. They were executed on March 30, 1979 which is three weeks after the first payment but two months before the final payment. The suggestion that the payment was for HDC's services, which is completely unsupported, is inconsistent with the fact that the payor required documentation only from Hemmerle Industries and Hemmerle Sr., not from HDC.

Hemmerle Sr. applied to this court on May 22, 1979 (after the first payment and after the deeds had been executed) for leave to execute the instruments on behalf of Hemmerle Industries. This application was made in the matter of Hemmerle Industries which had been filed here as a Chapter XI proceeding. The application was denied two days later. (C.P. No. 20 in Case No. 78–1452–Bk–CA–B). There is nothing in this application and nothing elsewhere in the record before me that would support the contention that HDC had any property interest or any title to the property in question or that it ever had the means, before these two transfers, to acquire any such interest.

■ I find that the two transfers to HDC consisted of money payable to and owned by the judgment debtors, Hemmerle Industries and Hemmerle Sr.; that the transfers were made without consideration from HDC at a time when Kassuba's action which resulted in the judgment against both parties was pending; and that the transfers were made by Hemmerle Sr. with an actual intent to delay, hinder or defraud Hemmerle's creditors, Kassuba. The two transfers were fraudulent under the provisions of § 726.01, Florida Statutes.

### Alter Ego

■ HDC was formed in December, 1975 to engage in the sale or development of real estate. The major, if not the only assets received by the corporation since its formation are the two fraudulent transfers and assets generated from the use of those funds and Hemmerle Sr.'s entrepreneurial talent. All of the corporate stock is held by Hemmerle Sr.'s son, daughter and wife, who also are its officers and directors. The son, Kenneth V. Hemmerle, Jr., who is the president, has attended college and law school out of the State during most of the life of the corporation.

Although Hemmerle Sr. is neither a stockholder, officer, director, or employee, he has always been in direct, daily control of the corporation. He is an authorized signatory on the corporate bank account and he has signed every check ever issued by the corporation as well as its tax returns.

All of his and his wife's personal expenses are paid from the corporate account as well as their children's educational expenses. Almost every, if not every action taken for the corporation has been taken by Hemmerle Sr. His son, who claims to have made the decisions, concedes that he consults his father upon every decision. The son has neither the experience nor the time required for the position he holds in name only.

Hemmerle Sr., who with his wife enjoys a comfortable living at the expense of the corporation while he devotes most of his time to the business of the corporation, claims to be unemployed and judgment proof.

The corporation has had no stockholder or directors' meetings since its inception. We are told that all of the corporate records were stolen in November, 1979. None have ever been reconstructed or replaced.

The explanation given by the Hemmerles for the unusual role of the father in the corporation is that he is an agent for the corporation and that his constant use of the corporate account for his personal expenses is either a loan to him by his son or reimbursement for corporate expenses. There is no record of a loan and he has been unable to produce one single document reflecting a corporate expense advanced by him. The explanation is completely unconvincing.

I find from this record that the corporation was formed and since its inception has been used for the primary purpose of defrauding the creditors of Hemmerle Sr. by providing a place to secrete his assets and his earnings from those assets since 1975. Under these circumstances, the corporate veil must be disregarded. The corporation is, in fact, a sham and is the alter ego of Hemmerle Sr. *Aztec Motel Inc. v. State ex rel. Faircloth*, Fla.1971, 251 So.2d 849, 852. *Plank v. Arban*, Fla.App.1970, 241 So.2d 198, 199.

Counsel for HDC has argued that the corporate veil may only be disregarded in order to make an individual liable for corporate obligations. While these doc-trines are frequently employed for that purpose, the veil must also be disregarded when the corporation is organized and used by an individual to defraud his creditors. *Linn and Lane Timber Co. v. U.S.*, 236 U.S. 574, 35 S.Ct. 440, 59 L.Ed. 725 (1915); 18 Am.Jur.2d Corporations, § 16. The Florida Rule is consistent with this conclusion:

"The equitable principle set out in the opinion by Judge Knott in the case of *Cushman v. Schubert*, Fla.App.1959, 110 So.2d 703, is clearly applicable to this case. There the court recognized the rule that equity will not allow a corporate veil to cover fraud or injustice, and to prevent such the corporate entity may be disregarded and the corporation and individual or individuals owning all of its stock and assets treated as identical." *Plank v. Arban*, Fla.App.1970, 241 So.2d 198, 199.

It follows that the plaintiff, Kassuba, is entitled to satisfy its judgment from the property and assets of Hemmerle Development Corporation as the alter ego of Kenneth V. Hemmerle, Sr. As is required by B.R. 921(a), a separate judgment will be entered to that effect. Costs will be taxed on motion.