**In the Matter of James Vincent ACQUAFREDDA, Joan B. Acquafredda, Debtors.**

**George HADLEY, Plaintiff,**

v.

**James Vincent ACQUAFREDDA, et al., Defendants.**

**Bankruptcy Nos. 82–332, 82–331. Adv. Nos. 82–352, 82–351.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 26, 1983.

**910**

Shirley Arcuri, Tampa, Fla., for plaintiff.

James and Joan Acquafredda, pro se.

Michael Acquafredda, pro se.

Donald Kaltenbach, New Port Richey, Fla., for Gulf Coast Sanitation, Inc., defendant.

Alan T. Dimond, Miami, Fla., for defendant, Industrial Waste Service, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OF LAW

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a claim asserted by George Hadley, the Trustee of the estate, against the several defendants named in the above captioned adversary proceeding. The Trustee's claim for relief is based on Sec. 544(b) of the Bankruptcy Code. The complaint asserts that Vincent Acquafredda and Joan B. Acquafredda, his wife, (the Debtors) fraudulently transferred certain assets to Gulf Coast Sanitation, Inc. (Sanitation) and Gulf Coast Disposal, Inc. (Disposal). The Debtors were principals of Sanitation and Disposal, Florida corporations which were dissolved in 1977 and 1979, respectively. Defendant Michael Acquafred-

da is the son of the Debtors and sole stockholder of Gulf Coast Carting, Inc. (Carting), a Florida corporation which was dissolved in 1980. While Industrial Waste Service, Inc. (Industrial) was originally named a Defendant, a Motion to Dismiss was granted as to this corporation on the condition that all payments owed by Industrial to any other Defendants would be paid into the Court registry pending final disposition of this proceeding.

From the evidence adduced at trial, the Court finds and concludes as follows:

In July of 1974, the Debtors purchased certain assets from Community Disposal, Inc., including at least two trucks and commercial trash accounts producing revenues of $8,000 to $9,000 per month. The Debtors made a down payment in the amount of $10,000 and executed a promissory note in the principal amount of $70,000. This obligation earns interest at an annual rate of 7%. The promissory note was ultimately assigned to Joseph Messina by Community Disposal, Inc., the previous owner of the assets involved. The Debtors paid only $800 on this note, and there is no dispute that the Debtors remain indebted to Mr. Messina, to the extent of the remaining balance.

It further appears that the Debtors transferred all the assets acquired from Community Disposal, Inc. to Sanitation and Disposal. These two newly formed corporations, in which the Debtors were the sole stockholders, paid no consideration to the Debtors for the transfer. Michael Acquafredda, the son of the Debtors, was employed by these two corporations until they were dissolved. In 1979, Michael Acquafredda formed Carting and commenced doing business with the assets used in the business previously conducted by Sanitation and Disposal. There was no consideration furnished by Carting either to Sanitation or to Disposal, or to the Debtors for the assets transferred to Carting. The assets included approximately 300 trash containers, commonly known as dumpsters; the business routes, i.e., customer lists, which consisted of between 200 and 300 stops. The business income at that time was between $9,000 and $12,000 per month.

In July of 1981, Carting sold substantially the same assets to Industrial Waste Service, Inc. (Industrial) for $200,000. Industrial paid $50,000 in cash and gave a promissory note for the balance. The note is to be paid in installments of $2,500 per month. It is unclear whether the note was made payable to Gulf Coast Carting or Michael Acquafredda or both, but it is clear that Carting is no longer in business having been dissolved in December of 1980.

The Debtors filed their petitions for relief under Chapter 7 of the Bankruptcy Code on February 14, 1982. The Trustee instituted this adversary proceeding pursuant to Sec. 544(b), based on the contention that the transfers by the Debtors were in fraud of their creditors. He does not seek to set aside the transfers, but seeks a judgment against Michael Acquafredda for $50,000 (the amount received in cash from Industrial), assignment to the Trustee of the note executed by Industrial Waste and turnover of all monies already received on the installment payments on the note.

Section 544(b) provides that a Trustee in Bankruptcy may avoid any transfer of an interest of the Debtor in property that is voidable under applicable non-bankruptcy laws by a creditor holding an allowable unsecured claim. In order to prevail under this Section, the Trustee must establish first that, at the time that the transaction under attack occurred, there was, in fact, a creditor in existence who was holding an unsecured claim which is allowable under Section 502 of the Code. Second, the Trustee must establish that the transaction could have been avoided by such creditor under the applicable local law, in this instance, under the laws of the State of Florida.

There is no serious dispute that there were, in fact, creditors who held unsecured claims against the Debtors at the time relevant. Joseph Messina was holding and still holds the promissory note executed by the Debtor in connection with the acquisition of the assets from Community Disposal. Tan-

ner and Associates, Inc., also held a claim which was reduced to judgment in the amount of $14,831.92 on April 26, 1978. This leaves for consideration whether the transfers of the assets by the Debtors to the various defendants were voidable under the laws of Florida.

The transfer under attack is the initial transfer by the Debtors to Disposal and Sanitation, the corporations formed by them and in which they were the sole stockholders. These two corporate entities continued to operate the business in the same manner in which it was operated by the Debtors as sole proprietors. While it is true that this transfer of assets by the Debtors to the newly formed corporation was not supported by any consideration whatsoever, it ostensibly was a transfer in exchange for all the outstanding stock in these two corporations. However, unless the Trustee's right of recovery under Section 544 is not limited to recovery against the immediate transferees, in this case, against Disposal and Sanitation, the Trustee's right to prevail cannot be recognized. This result is inevitable because all subsequent transfers, i.e., the transfers by Sanitation and Disposal to Carting, were transfers by two non-debtor entities of property in which these Debtors ostensibly no longer had any interest. Of course, the same conclusion is equally applicable to the ultimate transfer, that is, the transfer by Carting to Industrial, the transfer proceeds of which the Trustee now seeks to recover.

Thus, the extent of the Trustee's rights of recovery under Section 544 must be determined before one can address the question of a fraudulent transfer. The answer to this initial issue is found in Section 550(a) of the Code which provides inter alia that

> . . . to the extent that a transfer is voided under Sections 544, 545, 547, 548, 549, or 724(a) of this title, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from
>
> (2) any immediate or mediate transferee of such initial transferee.

This leaves for consideration the true character of these transfers. The several transactions involved here were not transactions commonly recognized as ones conducted at arms length. In each instance, with the exception of the transfer to Industrial, both the transferors and the transferees, although operating under a corporate name, were corporate entities that were family-owned and controlled by either the transferors or transferees. There is hardly any question that the very same assets changed hands as a result of each exchange, but all assets remained within the same family and were controlled by the same family members.

Fla.Stat.Sec. 726.01 provides, inter alia, that every conveyance or transfer of property made with intent to delay, hinder or defraud creditors is void and of no effect. Intent to defraud within the meaning of the statute is the Debtor's intention to prevent his creditors from satisfying their debts. *Wimmers v. Blackburn,* 151 Fla. 236, 9 So.2d 505 (1942). The intent must exist at the time of the transfer which is under attack. *Bay View Estates Corp. v. Southerland,* 114 Fla. 635, 154 So. 894 (1934). However, when the legal effect of the conveyance is to delay or hinder creditors, it is fraud in law regardless of the actual motives of the Debtor. *Whetstone v. Coslick,* 117 Fla. 203, 157 So. 666 (1934); *Livesay Industries, Inc. v. Window Co.,* 305 F.2d 934 (5th Cir.1962).

Certain facts and circumstances have been recognized as indicia or "badges" of fraud. The Florida Supreme Court in *Cleveland Trust Company v. Foster,* 93 So.2d 112 (Fla.1957) listed the most important indicators of fraud as follows:

(a) Relationship between the debtor and the transferee.

(b) Lack of consideration for the conveyance.

(c) Insolvency or indebtedness of the debtor.

(d) The transfer of the debtor's entire estate.

(e) Reservation of benefits, control or dominion by the Debtor.

(f) Secrecy or concealment of the transaction.

(g) Pendency or threat of litigation at the time of the transfer.

■ Each of the above-mentioned badges of fraud has evidentiary force in establishing the fraudulent character of a transfer. Although the badges of fraud may be inconclusive to establish fraud when considered separately, if they exist in combination, they "may be their number and joint consideration be sufficient to constitute conclusive proof" of fraud. *Florida National Bank of Gainsville v. Sherouse,* 80 Fla. 405, 86 So. 279 (1920). In this State, it is a well-established proposition of law that the transferee, for no consideration, will not be permitted to benefit to the detriment of the creditors of the transferors. *In re Flanzbaum,* 10 B.R. 420 (Bkrtcy.S.D.Fla. 1981); *In re Kassuba,* 10 B.R. 309 (D.C.S.D. Fla.1981).

■ Applying the foregoing legal principles to the record as established at the final evidentiary hearing, this Court is satisfied that the initial transfers by the Debtors to Sanitation and Disposal were not bona fide arms length transactions. None of the transfers were conducted in an acceptable business manner and none are supported by an actual Bill of Sale or other documentation. The end result after each transfer was that the assets still remained in the use and under the control of the transferors, all of which belies the claim that these were legitimate and proper transfers, and that the Debtors effectively divested themselves of ownership in the assets ultimately sold to Industrial.

Michael Acquafredda claims that he furnished support to the Debtors as part of the consideration for the assets he acquired from them and that he also paid substantial sums to them from his savings. This contention defies credibility and finds no competent evidentiary support. It is without dispute that Michael Acquafredda never earned in his adult life any monies of any consequence which would have enabled him to furnish support to his parents, let alone accumulate substantial monies which would have enabled him to furnish actual monetary consideration for the purchase of these assets.

Having found that the transfers were fraudulent, this leaves for consideration the remedy available to the Trustee. Industrial did give substantial consideration in exchange for the assets. Given its status as a bona fide purchaser, the sale to Industrial cannot be set aside. However, it is clear that by virtue of Sec. 550 of the Bankruptcy Code, the trustee may recover the fruits of the transfer from any immediate or mediate transferee. In addition, this Court is sitting as a court of equity and may fashion an appropriate remedy to correct a wrong and, to that end, to impose any equitable liens in favor of the Trustee on the proceeds of the transfer by Carting to Industrial.

Accordingly, it appears to be appropriate to award a money judgment against Michael Acquafredda in the amount of $50,000, to direct him to turn over to the Trustee all monies paid by Industrial under the promissory note, and to direct him to assign said note to the Trustee, and to direct Industrial to make all future payments to the Debtors' estate.

This is not a related proceeding within the meaning of the definition furnished by Emergency Rule (d)(3)(A). Therefore, the judgment entered herein in accordance with the foregoing shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the Bankruptcy Judge or by a District Judge, pursuant to Emergency Rule (d)(2).

A separate final judgment will be entered in accordance with the foregoing.