William SCHAPS, Trustee in Bankruptcy of Willbet Enterprises, Inc.

v.

BALLY'S PARK PLACE, INC. and Marina Associates, d/b/a Harrah's Marina

v.

William RUSH.

Civ. A. No. 85-2145.

United States District Court, E.D. Pennsylvania.

Feb. 5, 1986.

Melvin Lashner, Philadelphia, Pa., for plaintiff.

Bonnie McDougal, Alan D. Windt, Joseph P. Dougher, Lawrence Lichtenstein, Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

This case arises out of the transfer of corporate funds from Willbet Enterprises, Inc. (Willbet) to the defendants, Bally's Park Place, Inc. (Bally's) and Marina Associates, d/b/a Harrah's Marina (Harrah's). The plaintiff William Schaps is the trustee in bankruptcy of Willbet, against which an involuntary petition in bankruptcy was filed on March 31, 1983. Plaintiff alleges that from August 3, 1980 through May 10, 1982, the president and chief executive officer of Willbet—William Rush—issued thirty-three (33) Willbet checks payable to Bally's in the total sum of $63,375.00 and that from September 10, 1981 through April 23, 1982, Rush issued seven (7) Willbet checks payable to Harrah's in the total sum of $15,800.00. Plaintiff alleges that these checks were issued to the defendants in

order to satisfy personal gambling debts incurred solely by Mr. Rush. Furthermore, plaintiff contends that at the time of these transfers, Willbet Enterprises, Inc. was insolvent.

Plaintiff seeks to set aside as fraudulent the transfers to Bally's and Harrah's, pursuant to 11 U.S.C. § 544(b) and 39 Pa.S.A. § 351 *et seq.*, and also seeks to recover from defendants the value of the transfer under 11 U.S.C. § 550. Bally's filed a third party complaint against Rush, alleging that it is entitled to judgment against Rush in the event that plaintiff obtains a judgment against Bally's. Presently before the Court is plaintiff's motion for summary judgment. For reasons discussed below plaintiff's motion will be denied.

■ On a motion for summary judgment it is the movant's burden to demonstrate that the facts which would warrant a summary judgment in its favor are indisputable. The opposing party is given the benefit of any favorable inferences. *See Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). In light of this standard it is apparent that several genuine issues of material fact remain in dispute in this case, including, but not limited to:

1) Whether the funds paid to defendants by Rush were from monies Willbet owed Rush;

2) If not, whether Rush ever repaid Willbet the funds transferred to the defendants. If the funds were owed to Rush by Willbet, *or* if Rush repaid Willbet for his use of the funds, then plaintiff's case against the defendants will fall.

The only records in support of the motion which plaintiff has provided to the Court are photocopies of several checks drawn on Willbet's account, signed by Rush, and made payable to the defendants. Plaintiff also relies on the affidavit of Howard B. Asher to resolve several issues of fact. Unfortunately for plaintiff, however, both the photocopies of the checks and the Ash-

er Affidavit are inadmissible for purposes of this summary judgment motion.[1]

Rule 56(e) of the Federal Rules of Civil Procedure provides in part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affidavit is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

█ Howard Asher is a certified public accountant who was authorized by the Bankruptcy Court to review Willbet's books and records. However, the books and records upon which Asher bases his statement are not attached to his affidavit. Thus unless the records come under one of the exceptions to the general prohibition against hearsay, Asher's affidavit is inadmissible under Rule 56(e) of the Federal Rules of Civil Procedure, because it relies upon hearsay not within any exception. *See, e.g., Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980). Nor does Asher, as the Bankruptcy Court-appointed accountant claim to have personal knowledge of the financial condition or organization of Willbet, at or about the time of the transactions in question.

Rule 803(6) of the Federal Rules of Evidence provides:

(6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memo-randum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

In an attempt to come within the "business records" exception to the hearsay rule (F.R.E. 803(6)) plaintiff offers the affidavit of Herbert Weinstein, C.P.A. The Weinstein affidavit states that the books which Weinstein turned over to Asher & Co., Ltd., the Trustee's accountants, were the original books, records and ledgers of Willbet Enterprises, Inc., as stored in Weinstein's office, upon Willbet leaving their Center City offices. This affidavit, however, is insufficient to bring the records and books within the business records hearsay exception.

Mr. Weinstein is not the "custodian of records or other qualified witness" as required by 803(6). He is merely an "outside accountant" whose sole responsibility was "compilation services".[2] Mr. Weinstein has not stated where or how the records were made, nor has he stated whether it was the regular practice of Willbet to create records of this kind. In addition Weinstein does not state that the records were made by someone with first-hand knowledge of the matters recorded. Thus the Weinstein affidavit is insufficient to establish the validity of the records upon which the Asher affidavit is made.

Furthermore, Rule 803(6) provides for the exclusion of business records which otherwise meet its requirements when the source of information or the method or

---

**1.** Even if the photocopied checks were admissible, they, in and of themselves, do not resolve the factual issues noted above.

**2.** In fact, the affidavit, as typed, stated that Weinstein was the "former accountant of Willbet Enterprises, Inc." However, handwritten insertions were added so that the phrase reads "former *outside* accountant of Willbet Enterprises, *providing compilation services only.*" Exhibit B to Plaintiff's Reply to Defendant's Answer to Plaintiff's Motion for Summary Judgment (emphasis supplied).

circumstances of preparation indicate a lack of trustworthiness. Plaintiff admits that "Willbet books were not kept in a business like fashion or were intentionally destroyed ..." (Complaint ¶ 8). Yet plaintiff seeks to proffer an accountant's opinion which is based on those very same books.

Based on the proffered evidence at this time, the Willbet records fail to meet the requirements of F.R.E. 803(6). Accordingly the affidavit of Howard Asher which is based on those records will not be admitted for purposes of this summary judgment motion.

■ Defendants also contest the admissibility of photocopies of checks which were drawn on Willbet and made payable to the defendants. Plaintiff has not met his burden of authenticating and identifying these checks as required by Rule 56(e). In an attempt to authenticate the checks, plaintiff has submitted a copy of defendant Bally's answer to a request for admissions. However, without the accompanying request for admissions, defendant's answer is of no use to this Court. Consequently the photocopies are also inadmissible for purposes of this motion.

■ Turning to the merits, plaintiff seeks to set aside as fraudulent all of the transfers made by Rush to Bally's and Harrah's. Pursuant to Section 544(b) of the Bankruptcy Code the trustee in bankruptcy may set aside any transfer that is voidable under applicable state law, here the Pennsylvania Fraudulent Conveyance Act.[3] Defendants contend that in the absence of evidence of a creditor holding an unsecured claim only those transfers which occurred on or within one year of the date of the filing of the Willbet bankruptcy can be set aside. As plaintiff recognizes, a prerequisite to a Section 544(b) suit is the existence of an actual creditor holding an unsecured claim who could have avoided the transfer under state law. *In re Neuman*, 11 B.R. 628, 633 (Bankr.S.D.N.Y.) *aff'd* 15 B.R. 658 (S.D.N.Y.1981).

Plaintiff has offered the affidavit of A. Harry Levitan, Esquire as evidence of an unsecured claim which existed at the time of Willbet's collapse. Because I am satisfied that the Levitan affidavit is sufficient to show a "creditor in existence holding an unsecured claim" during the time in question, *In the Matter of Acquafredda*, 26 B.R. 909, 911 (Bankr.N.D.Fla.1983), plaintiff will be permitted at trial to pursue his claim as to all of the alleged transfers between Willbet and the defendants.

In addition, the two-prong approach under the applicable Pennsylvania law requires the trustee to show: first, that the transfer was made by an insolvent debtor or rendered the debtor insolvent; second, that the transfer was for less than fair consideration. 11 U.S.C. §§ 544(b), 548(a)(2); 39 Pa.Stat.Ann. § 354; *In Re Famous Meat Products, Inc.*, 19 B.R. 48, 50 (Bankr.E.D.Pa.1982). Given the inadmissible status of the majority of plaintiff's proferred evidence, plaintiff is left to meet its burden under the test at trial.

If plaintiff is able to prevail under the required standard of § 544, then he *may* be able to recover a monetary judgment from defendants.

Section 550 the Bankruptcy Code provides in pertinent part:

(a) [T]o the extent that a transfer is avoided under section 544, ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from:

(1) The initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) Any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under subsection (a)(2) of this section from:

(1) A transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or

---

**3.** Defendants agree to assume, for now, that Pennsylvania law applies.

(2) Any immediate or mediate good faith transferee of such transferee.

Defendants contend that before plaintiff can recover the value of the transfers under Section 550(a)(1) of the Bankruptcy Code he must establish that Bally's and Harrah's are the initial transferees from Willbet. Defendants maintain that they are the secondary transferees and therefore § 550(a)(2) applies to this action. Under § 550(a)(2) the trustee may not recover from a secondary transferee that takes for value, in good faith and without knowledge of the voidability of the transfer. Defendants contend that Rush is the true initial transferee and that plaintiff has failed to carry his burden in the motion to show that Bally's and Harrah's did not accept for value, nor in good faith, nor without knowledge of the voidability of the transfer. *See In re The DeRochfort Co., Ltd.*, 22 B.R. 826 (Bankr.S.D.Fla.1982).

Plaintiff relies on the "clear unambiguous" language and the legislative history of § 550 in support of his position that defendants were initial transferees in this action. In my opinion, however, plaintiff has attempted to strong arm the language of the statute into a meaning which is not plainly indicated by the language of § 550. Plaintiff asserts that Rush is the "entity for whose benefit an avoided transfer is made" and that the defendants are the initial transferee of such transfer. While under plaintiff's theory this characterization may be accurate, it does not bring the defendants within the ambit of the statutory language of § 550(a)(1). Under that section, there is no provision which entitles the trustee to recover from the initial transferee of the entity to whose benefit the transfer was made. The statute allows for recovery from *either* the initial transferee or the entity to whom such transfer was made. Plaintiff has sought to introduce an additional step in the statutory scheme.

Because the statutory language does not provide for the situation delineated by plaintiff, it is up to plaintiff to provide precedent which supports his position.

Plaintiff acknowledges, however, the scarcity of the case law on this issue. In fact, this Court is not convinced that any of the section 550 cases cited by either party is directly on point with the instant case. As such the issue before this Court appears to be one of first impression. In my opinion the inquiry as to whether the defendants were initial transferees or secondary transferees is dependent upon a factual analysis. Based on the evidence adduced to date and on plaintiff's theory (namely, that Rush personally used Willbet funds to repay gambling debts) I am inclined to find that defendants were, at most, secondary transferees. However, because the record before the Court is sparse at this time, the parties will be permitted to present evidence at trial which will factually clarify the legal issue as to whether defendants were initial transferees.

Plaintiff argues that regardless of whether the defendants are the immediate transferees, he may still recover the transfer the transfer pursuant to § 550(a)(2) on summary judgment because the defendants did not accept the transfers in good faith. Plaintiff contends that the defendants violated Casino Control Commission regulations in establishing a personal line of credit with William Rush against the corporate account of Willbet. Plaintiff asserts that this violation negates any good faith on the part of the defendants.

While a violation of the Casino Control Act might be evidence of bad faith, plaintiff's allegations of Control Act violations are unfounded as a matter of law. Plaintiff contends that N.J.A.C. 19:45–1.-27(a)(6)(ii); 17 N.J.R. 1329, applies to this action. This rule arguably prohibits casinos from extending a personal line of credit against a corporate account. However, this rule was not in effect at the time Rush established a line of credit with the defendants. This provision did not go into effect until December 1, 1985. Indeed the Casino Commission characterized this regulation as "Adopted Repeal and New Rule." 17 N.J.R. 1327.

The rule in effect at the time of the alleged transfers was N.J.A.C. 19:45–1.27. It contains no prohibition against the acceptance of a corporate checking account for purposes of establishing a line of credit. Thus plaintiff's assertion of bad faith is not supported by the Casino Control Act. Plaintiff will be given the opportunity at trial, however, to establish that defendants' acceptance of the Willbet checks did not meet the requirements of good faith, receipt for value, and taking without knowledge of the voidability of the transfers.

For all of the foregoing reasons plaintiff's motion for summary judgment is denied. Accordingly defendants' request for a stay of the summary judgment motion pending further discovery need not be addressed.

An appropriate order follows.