**JOHNSON et al. v. EWING et ux.  (No. 260.)**

(Court of Civil Appeals of Texas. Waco.
Oct. 15, 1925.)

**1. Evidence ⬅➞543(3)—Witness held qualified
to testify as to market value of farm.**

Witness, a justice of the peace and real es-
tate agent, acquainted with real estate values
in the neighborhood, *held* qualified to testify as
to what the market value of farm of debtor
owner was at time. latter made parol gift of it.

**2. Evidence ⬅➞506—Question as to what prop-
erty will sell for at execution sale is not mat-
ter for expert testimony.**

Question as to what property will sell for
at execution sale is not matter for expert tes-
timony, but is for jury.

**3. Fraudulent conveyances ⬅➞308(3) — Ques-
tion of solvency or insolvency of donor of land
by parol gift, while indebted to creditor, held
for jury.**

Question of solvency or insolvency of donor
of land by parol gift, made while he was indebt-
ed to defendant creditors, *held* for jury.

**4. Evidence ⬅➞488 — Witness' opinion as to
value of land retained by debtor held properly
admitted on issue of solvency.**

Witness' opinion as to value of land re-
tained by debtor at time he made a parol gift
of other property *held* properly admitted on is-
sue of debtor's solvency or insolvency.

**5. Fraudulent conveyances ⬅➞57(1) — Parol
gift of lot by debtor made, while he was
solvent, was valid.**

Parol gift of lot by debtor, made while he
was solvent, was valid under Rev. St. 1911, arts.
3966, 3967.

**6. Evidence ⬅➞18 — Common knowledge that
land values vary according to local conditions.**

It is common knowledge that land values
vary according, somewhat, to local conditions,
such as crop failures, drouths, etc.

**7. Fraudulent conveyances ⬅➞297 — Evidence
held to show debtor was solvent.**

Evidence *held* to support jury's finding that
a debtor was solvent at the time he made a
parol gift of a lot to plaintiffs.

**8. Fraudulent conveyances ⬅➞57(4) — Subse-
quent insolvency could not affect legality of
gift made during solvency.**

Subsequent insolvency of debtor making
parol gift of land could not affect legality of
gift, within Rev. St. 1911, arts. 3966, 3967,
made during his solvency.

**9. Fraudulent conveyances ⬅➞206(1) — Con-
veyance of lot by parol gift during donor's
insolvency is void only as against prior credi-
tors.**

Conveyance of lot by parol gift during do-
nor's insolvency is void, within Rev. St. 1911,
art. 3967, only as against prior creditors.

Appeal from District Court, McLennan
County; H. M. Richey, Judge.

Suit by George Ewing and wife against
Mrs. Minnie Johnson and another. From an
adverse judgment, defendants appeal. Af-
firmed.

R. L. Johnson and Williams, Williams,
McClellan & Lincoln, all of Waco, for ap-
pellants.

Nat Harris, of Waco, for appellees.

*Statement.*

STANFORD, J. This suit was instituted
by appellees against appellants and Leslie
Stegall, sheriff of McLennon county, to en-
join the sale under execution of lot 3 in block
No. 1 of the Roller addition to the city of
Waco. Appellees alleged they were the equi-
table owners of said lot on April 9, 1923, and
for a long time prior thereto, and were such
owners, occupying and enjoying same as their
homestead, since the 9th day of April, 1923.
Appellees alleged further that on November
10, 1923, an alias execution was issued on a
judgment in the case of Minnie Johnson et
al. v. N. J. Bozeman in the district court of
McLennan county, Tex., and was, on Decem-
ber 11, 1923, caused to be levied on said
lot; that appellees were in no manner con-
nected with said suit or judgment, and are
not indebted to appellants in any amount;
that appellees are the equitable owners of
said lot, and were at the time of the levy of
said execution and at the time of the recov-
ery of the judgment by appellants against N.
J. Bozeman, under a parol gift from N. J.
Bozeman, who placed them in possession of
said lot; and that they entered into possession
thereof and have erected valuable improve-
ments thereon, and are now in possession, oc-
cupying and using same as their homestead,
and have so used same since April 9, 1923.
A temporary injunction was granted by the
court, restraining the sale of said property.
On the hearing of said injunction suit ap-
pellants answered, alleging, in substance,
that the conveyance from Bozeman to Ewing
and wife was made to defraud the creditors
of said Bozeman, or was given with intent
to delay or hinder or defraud creditors or
other persons, and such alleged conveyance
is as to these defendants in all respects void
under article 3966, Revised Civil Statutes of
Texas; that plaintiffs are not purchasers
for a valuable consideration from Bozeman,
and that the plaintiffs had notice of the
fraudulent intent of their grantor; that the
alleged conveyance from Bozeman to Ewing
and wife was void under article 3967 of the
Revised Statutes of Texas. Appellees re-
plied to the above pleading by alleging, in
substance, that they are purchasers of the
lot in question in good faith; that they have
in good faith placed valuable improvements
thereon, amounting to $4,000, they being ig-
norant of any condition which would render

the conveyance to them voidable, if such condition exists, which is specially denied.

The court submitted the case to the jury on special issues, which said issues and the answers thereto are as follows:

"(1) Was N. J. Bozeman solvent in September, 1922? Answer 'Yes' or 'No.' Answer: Yes.

"(2) Did N. J. Bozeman convey by parol gift the lot in question to his daughter, Bonnie, in September, 1922? Answer 'Yes' or 'No.' Answer: Yes.

"If you answer special issues Nos. 1 and 2 'Yes,' you need not answer special issue No. 3, but if you answer either of them 'No,' then you are asked to answer special issue No. 3.

"(3) Were the improvements placed upon said lot by George Ewing and wife placed there in good faith? Answer 'Yes' or 'No.' Not answered."

On the jury's answers to said special issues the court entered judgment making perpetual the temporary injunction theretofore granted.

### Opinion.

[1, 2] Under appellants' thirteenth and fourteenth assignments of error appellants contend that the trial court erred in permitting the witness J. B. Howard to testify to the reasonable market value of the 130-acre farm in Milam county known as the Bozeman farm, being the same farm foreclosed upon by appellants in this case in their suit against N. J. Bozeman on a note for $1,400. The objection made to said evidence was that the witness had not qualified, and did not show himself qualified to answer questions on real estate values and did not show that he was sufficiently familiar with said farm to testify as an expert as to the market value of said farm, and that said evidence was immaterial and irrelevant. The witness Howard had testified that he lived at Rosebud, and was a justice of the peace and real estate agent in August, 1922; that at said times he was familiar with the tract of land, containing about 130 acres, belonging to N. J. Bozeman; that he had been familiar with said land for 12 or 15 years; that during August, 1922, he gave much time and thought to the sale of real estate, and sold, a short time before the time mentioned, two or three small farms of about the same general grade and quality of land as the Bozeman farm; and that he knew the value of the Bozeman farm in August, 1922. The witness Howard was qualified to testify to the market value of this 130-acre farm in August, 1922. Was this evidence material? The other evidence in the case was to the effect that N. J. Bozeman owed only two debts, one a note for $1,400, with accrued interest, payable to the order of Mrs. J. D. Johnson, secured by a first deed of trust lien on the Bozeman farm of 130 acres in Milam county, also a note for about $875, payable to the order of J. W. Watson, and secured by a sec-

276 S.W.—50

ond deed of trust lien on the same farm. The record also discloses that the lot involved in this suit was, on September 9, 1922, conveyed by parol gift by N. J. Bozeman to his daughter, Mrs. George Ewing, and that Mrs. Ewing and husband entered upon said lot and erected valuable improvements on same of the value of $4,000, and that the 130-acre farm in Milam county was the only remaining property he owned subject to execution, so it became a material inquiry whether or not, on or about September 9, 1922, the date of such gift, N. J. Bozeman, not including the lot in controversy, was solvent or insolvent, and to determine this it became important to determine the value of said farm. At least this would have been the important issue in the case if it had been properly made by the pleading, and we know of no better way to ascertain the value of farm lands than to inquire of those who are familiar with such lands and who are familiar with the prevailing prices of such lands in the community where they are situated. But appellants contend that the question to be determined was not the market value of Bozeman's remaining property after the gift, but was whether or not said property would, under forced sale, bring sufficient to settle all debts, as held in Walker v. Loring, 89 Tex. 668, 36 S. W. 246.

In the later case of Maddox et al. v. Summerlin et ux., 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567, our Supreme Court, by Justice Brown, in discussing what is now article 3967, said:

"As to pre-existing debts, the gift was, by the statute, prima facie void and the property subject to the payment of such debts of Summerlin unless the donee should make it appear that he was, at the time the gift was made, 'possessed of property within this state, subject to execution, sufficient to pay his existing debts.' The terms of the statute are so plain that it is not necessary to add argument to enforce it."

[3, 4] This is the rule that has been followed generally by our Texas appellate courts. But, if the rule were as stated in the case of Walker v. Loring, supra, the rule there announced was not intended as a rule of evidence. We do not think that the question as to what property will sell for at execution sale is a matter for expert testimony. That is a matter that a jury would doubtless know as much about as any witness that might be produced. The question involved in special issue No. 1 was not the reasonable market value of the 130-acre farm, but the question involved was whether Bozeman was solvent or insolvent at the time he gave the lot involved to his daughter. And in connection with this issue the court gave the following instruction:

"In assisting you in arriving at your verdict in this case, the term 'solvent' is defined to mean a person who has property sufficient to

pay all his debts in full at once, or as they become due, and that all of his debts can be collected when due by legal process."

So the jury, in finding that Bozeman was solvent in September, 1922, necessarily found that at said time he had property subject to execution out of which all his debts could have been collected by legal process. Under the instructions and explanations of the court the question of solvency or insolvency of Bozeman in September, 1922, the time the gift was made, was a question for the determination of the jury, and in their determination of said question they were entitled to know and consider the reasonable market value of said farm at said time. The evidence of the witness Howard was properly admitted. We overrule appellant's thirteenth and fourteenth assignments.

[5-9] By several other assignments appellants contend that the trial court erred in refusing to instruct a verdict in their favor. The theory on which the case was tried was that, if N. J. Bozeman, at the time he gave the lot in question to his daughter, retained a sufficient amount of property to pay his then existing debts—in other words, if he was then solvent, not including the lot in controversy—then in that event the daughter took good title to said lot. This was the correct theory for the trial—at least, would have been, if the pleading had alleged that appellants were creditors of N. J. Bozeman at the time the parol conveyance was made. Article 3967, Revised Civil Statutes. The parol conveyance of the lot in question was made September 9, 1922. The witness J. B. Howard testified, as stated above, that he was familiar with the 130-acre farm in question, and had been 12 or 15 years, and that he was engaged in the real estate business, and a short time before August 9, 1922, he sold two or three small places of about the same grade and quality; that the Bozeman farm of 130 acres in August, 1922, was of the reasonable market value of $50 per acre. There are some circumstances, but no direct evidence, tending to show that about a year and a half later said farm was not worth as much as the witness Howard testified it was worth in August, 1922. This question of the solvency or insolvency of Bozeman in September, 1922, was a question of fact for the jury. The trial court defined the term "solvent," as stated above, and appellants presented no objections to the court's definition of the term "solvent." The court also instructed the jury that the burden of proof was on appellees to establish by a preponderance of the evidence the affirmative of the two issues submitted. It is true this 130-acre farm was the only property subject to execution that Bozeman had left after the gift of said lot on September 9, 1922, to his daughter. It is also true on said date his only indebtedness was two notes, both secured by deeds of trust on said farm, and some delinquent taxes. The question for the jury was the solvency of Bozeman on September 9, 1922, and to find him solvent they were required to find that said farm could be sold at private sale or under legal process in September, 1922, for a sufficient amount to pay all of Bozeman's debts. If said farm could on said date have been sold for what the witness Howard testified it was reasonably worth, then it was ample to pay all of Bozeman's debts, and leave an equity of some $2,500 in Bozeman. It is a matter of common knowledge that land values vary according, somewhat, to local conditions, such as crop failures, drouths, etc. If Bozeman, on September 9, 1922, was solvent, in that said farm was ample to pay all his debts, then the gift to his daughter was legal, and the daughter took good title to the lot in controversy, and, if more than a year later Bozeman was insolvent, in that said farm was not sufficient to pay all his debts, this later insolvency could not affect the legality of said gift to his daughter. The jury found that in September, 1922, N. J. Bozeman was solvent, and their finding is, we think, supported by the evidence. It is also true that, in order for appellants to question the validity of the parol conveyance from Bozeman to his daughter of September 9, 1922, under the provisions of article 3967 of the Revised Civil Statutes, it was incumbent upon them to plead and prove that they were prior creditors of Bozeman, and, appellants not having pleaded that they had any claim against Bozeman prior to the date of said parol conveyance, they failed to bring themselves within the purview of said article of our statutes. Moore et al. v. Belt (Tex. Civ. App.) 206 S. W. 225; Allen v. Crutcher (Tex. Civ. App.) 216 S. W. 236. We overrule all of these assignments of error.

We have carefully examined all of appellants' assignments, and find that there is no reversible error disclosed by any of them, and the judgment is in all things affirmed.