**In re TRYIT ENTERPRISES, Tryit II, Inc., Remco/West Trails I, Ltd., Tryit Limited No. 1, Debtors.**

**TRYIT ENTERPRISES, Tryit II, Inc., Remco/West Trails I, Ltd., Tryit Limited No. 1, Plaintiffs,**

v.

**GENERAL ELECTRIC CAPITAL CORPORATION, Defendant.**

**Bankruptcy Nos. 88–09537–H3–11, 88–09538–H5–11, 88–09539–H5–11 and 88–09540–H2–11. Adv. No. 89–0056–H3.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 29, 1990.

James R. O'Donnell, Susan Hardie, Butler & Binion, Houston, Tex., for plaintiffs.

Ronald Cohen, Finger, Small & Cohen, Houston, Tex., for defendant.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for trial the plaintiff's Complaint to Set Aside Fraudulent Transfers Pursuant to Texas Fraudulent Conveyance Act, Bus & C. Section 24.03 and 11 U.S.C. § 544(b). After considering the evidence, pleadings, memoranda and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment in conjunction herewith denying plaintiffs' Complaint.

To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

### Findings of Fact

The plaintiffs, Tryit Enterprises, Tryit Ltd. No. I, Tryit II, Inc., and Remco/West Trails I Ltd., are made up of Remco Enterprises, Inc. rent-to-own franchises. Each franchise leases home products, including television and stereo equipment, home furnishings and appliances. Each plaintiff commenced its Chapter 11 bankruptcy cases on November 21, 1988; each employed the same counsel. By virtue of a revolving loan and security agreement executed November 19, 1986 ("the November Loan Agreement"), plaintiffs' single major secured creditor is Defendant, General Electric Capital Corporation, formerly known as General Electric Credit Corporation ("GECC").

Plaintiffs are related entities in that they are: (1) all made up of stores that are Remco Enterprises, Inc. franchises; (2) Messrs. David Hickey and Michael Little are involved in the management and ownership of each one; and (3) they all received financing from GECC. Plaintiffs are separate entities in that they (1) maintain separate books; (2) file their own tax returns; (3) have separate bank accounts; and (4) pay separately for the administrative services provided to each by Tryit Enterprises.

Tryit Enterprises ("TE") is a Texas general partnership organized in 1983 to operate two rent-to-own television and appliance rental stores in San Antonio, Texas under the "Remco" tradename. The two general partners of TE are David R. Little and Michael B. Hickey. TE also serves as the single headquarters for all Plaintiffs. The "corporate" office is located in Houston, Texas, where Ms. Friday Ferguson supervises the administrative functions of TE. Prior to 1986, TE had a stand-alone financing arrangement with GECC. On January 28, 1986, TE and Tryit II, Inc. entered into a Revolving Loan and Security

Agreement with GECC ("the January, 1986 Loan Agreement") to obtain financing in the amount of up to $1,600,000. That loan agreement was replaced with the November 1986 Loan Agreement entered into by all four Plaintiffs and their non-debtor affiliate, Remco/West Trails II, Ltd.

Tryit Limited No. I ("TI") is a Texas limited partnership organized in 1985 to establish and operate seven television and appliance rental stores in the Minneapolis–St. Paul and Washington, D.C. metropolitan areas under the "Remco" tradename. Messrs. Little and Hickey are the general partners and there are 30 limited partners. The partnership borrowed funds from GECC pursuant to a Loan and Security Agreement dated June 4, 1985 to acquire inventory. That loan agreement was replaced by the November, 1986 Loan Agreement. TI sold its three stores in the Minneapolis–St. Paul area in July 1988 for cash. Substantially all of such sale proceeds were paid to GECC to be applied against outstanding debt obligations.

Tryit II, Inc. ("TII") is a Texas corporation organized in 1984 to operate a rent-to-own television and appliance rental store in San Antonio, Texas under the "Remco" tradename. It is owned by Messrs. Little and Hickey and four other individual shareholders. It entered into the January, 1986 Loan Agreement along with TE which was subsequently replaced by the November, 1986 Loan Agreement.

Remco/West Trails I, Ltd. ("R/WTI") is a Texas limited partnership organized in 1984 to establish and operate three rent-to-own television and appliance rental stores in Baltimore, Maryland under the "Remco" tradename. Its general partner is West Trails Corporation, a Texas corporation owned by Messrs. Little and Hickey. They acquired West Trails Corporation after R/WTI had already entered into a Loan and Security Agreement with GECC dated April 12, 1985. That loan agreement was replaced by the November, 1986 Loan Agreement.

On November 19, 1986, plaintiffs and their non-debtor affiliate Remco/West Trails II, Ltd. entered into the November, 1986 Loan Agreement with GECC. This new loan agreement consolidated all of the outstanding obligations of the plaintiffs and their non-debtor affiliate into one credit facility. Under such facility, GECC agreed to loan the lesser of $6,900,000 or seven times the rolling average of the previous three months' total rental income. The GECC credit facility was secured by a first lienholder security interest in each entity's accounts, equipment, inventory, general intangibles and books and records. In addition, all collections received by each entity were required to be deposited daily into a blocked deposit account or lock box at a depository designated by GECC. Although each entity only received a portion of the loan money, the loan agreement made each entity liable to repay the entire indebtedness.

Plaintiffs commenced this adversary proceeding seeking to set aside the cross-collateralization and cross-guaranty provisions of their loan agreements with Defendants as fraudulent transfers under Texas law. Plaintiffs contended that there was no "fair consideration" for the joint liability incurred by each plaintiff for the amount of the loan greater than the proceeds each actually received. Two loan agreements were disputed: the January 1986, Loan Agreement signed by two of the plaintiffs, which was fully paid off out of the proceeds of the second disputed loan; and the November, 1986 Loan Agreement, which was signed by all the plaintiffs and their non-debtor affiliate.

The original Complaint (Docket No. 1) stated a cause of action under 11 U.S.C. § 548. Plaintiffs later determined that any cause of action under § 548 was barred by the Statute of Limitations, and amended their Complaint accordingly.

Plaintiffs' Amended Complaint (Docket No. 14) looked to the Texas Fraudulent Conveyance Act ("TFCA") Section 24.03 as the applicable Texas law. Section 24.03 provides in pertinent part as follows:

(a) A transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the

property transferred, the debtor has at the time of the transfer enough property in this state subject to execution to pay off all his existing debts.

This statute is now Section 24.006 of the Uniform Fraudulent Transfer Act ("UFTA") adopted by Texas effective September 1, 1987. The relevant terminology in TFCA § 24.03 has been changed to a "reasonably equivalent value and the debtor was or became insolvent at the time of transfer" in UFTA § 24.006. Section 2 of UFTA makes TFCA § 24.03 applicable to transactions prior to 1987. Plaintiffs assert that Section 24.03 is made applicable to this bankruptcy proceeding by 11 U.S.C. § 544(b). However, they failed to allege the existence of an actual creditor holding an unsecured claim who could have avoided the transactions under Section 24.03, which is a prerequisite to a Section 544(b) suit.

Defendant did not address the issue of lack of an actual creditor under Section 544(b). Instead, defendant contends that although it was aware that the plaintiffs were separate entities, it treated them as a single enterprise with combined assets for determining solvency and fair consideration. Defendant contends that because the plaintiffs acted as a single business enterprise in their relationship with GECC, the Texas law would only void the obligations incurred by the plaintiffs if they were not made for fair consideration.

There was no evidence presented at trial which would establish that there existed a creditor who could have brought this action and to whose status the plaintiff would have succeeded under Section 544(b).

The evidence presented at trial showed that, as unrelated entities, as of November, 1986, not all of the Plaintiffs would have qualified for the proposed revolving loan agreement. Messrs. Little and Hickey decided to consolidate their related entities for loan purposes in order to offset the weakness of some of the entities against the borrowing strength of the others. Thus presented, the plaintiffs were all eligible for the proposed loan. Consequently, they collectively became the "Borrower" on the loan agreement with Defendant. Tryit Enterprises (TE) served as the representative in the agreement on behalf of all the plaintiffs.

Plaintiffs stated in their petition that they acted in haste to consolidate the related entities for loan purposes. (Docket No. 13.) Yet they did not present any evidence of time constraints in the trial. When asked whether Mr. Little or Mr. Hickey requested more time to apply for the loans, Mr. Little responded in the negative. (Little's Testimony, 11/6/89.) When asked why they prepared a consolidated financial statement (Executive Summary, DEF Exhibit No. 15) for defendant, Mr. Little responded that it was a GECC requirement, and that in fact he would have preferred five separate loans, but he knew that arrangement would not be feasible. (Little's Testimony, 12/8/89.)

The contention that consolidation was not desirable to plaintiffs was an issue in this proceeding. A letter to Dunn & Bradstreet from Ms. Ferguson, demonstrated that plaintiffs were working towards consolidation, and held themselves out in business as a single enterprise. (DEF Exhibit No. 24.) The letter strongly requested that Dunn & Bradstreet list plaintiffs as "Tryit Enterprises Consolidated". Moreover, the Executive Summary prepared for GECC and showing consolidated assets was used in applying for more than one loan for the plaintiffs by Messrs. Little and Hickey. (DEF Exhibit Nos. 62, 63 & 64.)

GECC only made disbursements to Ms. Ferguson at TE and did not inquire as to how those funds were distributed among the other plaintiffs. Plaintiffs never forwarded such distribution information to defendant. TE sent defendant a consolidated financial report monthly. While TE, TI, TII and R/WTI each signed the Agreement, the signatures for each entity were those of Messrs. Little and Hickey. (DEF Exhibit No. 17.)

Messrs. Little and Hickey compiled the consolidated balance sheet for all the entities, (the "Executive Summary") that was presented to defendant. It showed the combined entities to be solvent. Plaintiffs ask the Court to accept that the consolida-

tion of the entities into a single "Borrower" (TE) on the defendant's loan was an unusual arrangement that was done exclusively on GECC's demand. The evidence, however, shows that this was not the first consolidated effort of the plaintiffs, and furthermore, in Mr. David Little's own words, Tryit Enterprises was synonymous with all and any of the plaintiffs.

Mr. Little testified that "everyone" knew that Tryit Enterprises was a reference to any and all of the plaintiffs. (Little's Testimony, 11/6/89.) There were substantial reasons why vendors and creditors might confuse the identity of Tryit Enterprises with any of the other plaintiffs. None of the other entities had letterhead or business stationery. All business correspondence for any plaintiff appeared on Tryit Enterprises letterhead. In the Directory of the Association of Progressive Rental Organizations, the industry's "Who's Who", Michael Hickey is listed as a member, with Tryit Enterprises as his home office and all the Remco franchises of all the Plaintiffs as his stores. The other plaintiffs, TI, TII, and R/WTI, are not listed. (DEF Exhibit No. 26.)

The defense presented evidence of rental leases that were entered into by TE for individual rental centers located in Minnesota. TI owns and operates the stores in Minnesota. (DEF Exhibit Nos. 35, 36, 37.) This made TE liable on a lease for TI. Unlike the disputed situation here, no cross-collateralization or cross-guaranty provision were involved. TI was not even named on the lease.

Additionally, the telephone number of the city manager for the Baltimore rental stores owned by R/WTI was listed in the telephone book under TE. There was no listing at all for R/WTI. (Little's Testimony, 11/6/89.) Further, a vendor who did repair services for Remco/West Trails II in Pennsylvania filed a complaint in Houston naming TE as a Defendant. (DEF Exhibit No. 77.)

### Conclusions of Law

■ 11 U.S.C. § 544(b) provides for avoidance by the trustee (or debtor-in-pos-

session) of any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 or that is not allowable only under Section 502(e). In order to prevail under 11 U.S.C. § 544(b), one must establish first that, at the time that the transaction at issue occurred, there was in fact a creditor in existence who was holding an allowed unsecured claim, and second, that the transaction could have been avoided by such creditor under applicable state law. Plaintiffs failed to allege or present any evidence to establish that they have the requisite standing under Section 544(b) to pursue their cause of action. *See In re Hall*, 22 B.R. 942 (Bankr.M.D.Fla.1982); *In re Acquafredda*, 26 B.R. 909 (Bankr.M.D. Fla.1983); *Schaps v. Bally's Park Place, Inc.*, 58 B.R. 581 (E.D.Pa.1986); *In re Coors of North Mississippi, Inc.*, 66 B.R. 845 (Bankr.N.D.Miss.1986). As a result, this court finds that plaintiffs have not sustained their burden of proof of establishing that they are entitled to pursue an action under 11 U.S.C. § 544(b).

Even assuming that plaintiffs had made the requisite showing under Section 544(b), this court finds that the transactions are not voidable as they were in fact made for fair consideration.

■ The court is to look through the forms to the realities of the relationship between two or more entities to determine whether each is separate or a single business enterprise. *Murphy Bros. Chevrolet Co. v. East Oakland Auto Auc.*, 437 S.W.2d 272 (Tex.Civ.App.1969).

The defendants pled three legal bases on which the plaintiffs as consolidated could be held jointly and severally liable on the loan: (1) as a joint venture; (2) as a partnership by estoppel; and (3) as a single business enterprise. The court concludes that the most appropriate classification of the plaintiffs' interrelationship is that of a single business enterprise.

■ A joint venture or a partnership requires some sort of agreement between

the parties. The agreement has to relate to sharing profits and losses among the parties. *Coastal Plains Development Corp. v. Micrea Inc.*, 572 S.W.2d 285 (Tex. 1978). Plaintiffs here never made any agreement of this sort. To find a joint venture by estoppel or a partnership by estoppel there must be an element of reliance on the joint venture or partnership. *Allan Constr. Co. v. Parker Bros.*, 535 S.W.2d 751 (Tex.Civ.App.—Beaumont 1976, no writ). Although the defendant relied on plaintiff's representations, it relied on them to be a single business enterprise, not a joint venture or partnership.

■ Most of the case law on the single business enterprise theory refers to relationships between parent corporations and their subsidiaries. Although this present situation can be distinguished from a parent/sub relationship, the factors that are helpful in determining if a single business enterprise exists in those situations are useful here. Some of the relevant similarities are a "corporate" office that pays the bills for its affiliates, and each affiliate is charged with its proportional share of the main office expense, *Stone v. Eacho (In re Tip Top Tailors, Inc.)*, 127 F.2d 284, 286 (4th Cir.1942); and situations in which the same principals have overlapping ownership among the business entities, operate from the same office, use the same telephone number and post office box, have centralized accounting, and refer to all of the companies by a single name, *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex.App.—Houston (14th Dist.) 1986). Each of these elements applied to plaintiffs. While the various city locations of the retail stores did lead to some differences in locations and telephone numbers, the structure was essentialy centralized in the hands of Little and Hickey through TE. The court finds that plaintiffs were operating as a single business enterprise no later than November, 1986, and so examines the November, 1986 Loan Agreement and § 24.03 in that light.

■ The transactions in question were the January, 1986 Loan Agreement and the November, 1986 Loan Agreement. Under Texas law the obligations of the plaintiffs could be voided if the transfers were not made for "fair consideration." Tex.Bus. & Comm.Code Ann. § 24.03(a). Under TFCA, the fairness of the consideration received in a transfer and the solvency of the Debtor who made the transfer are to be measured as of the time of the transfer. *Johnson v. Ewing*, 276 S.W. 784 (Tex.Civ.App.—Waco 1925, no writ).

■ In this instance TE, TI, TII, and R/WTI incurred obligations for each other because they cross-collateralized and cross-guaranteed under the loan agreements. Since the assets of affiliated corporations are not generally treated as a common pool available to the creditors of each affiliate, unusual circumstances must be present to so treat them. The circumstances present should be such as to make it inequitable to allow the other affiliates to set up the principle of limited liability due to the fact that the creditors of all the affiliates had thought they were dealing with a unitary enterprise. *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 17 BCD 606, 609 (7th Cir.1988).

The cause of action relating to the January, 1986 Loan Agreement has been rendered moot as a result of that loan's being fully paid off with the proceeds of the November, 1986 Loan Agreement. Thus, the following analysis will be determinative of the November, 1986 Loan.

Plaintiffs argue that when they made those guaranty provisions they were essentially depleting their own estates without bringing in a corresponding value from which their creditors could benefit, and their creditors would suffer just as if they had "simply made a gift of [their] property or obligation." *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981).

■ The guarantee of an affiliate's debt is enforceable provided that the guarantor derives some benefit, even if indirect, from the guarantee. *Telefest, Inc. v. Vu-TV, Inc.*, 591 F.Supp. 1368, 1377–81 (D.N.J. 1984). Consideration does not have to be

dollar for dollar, but can be substantially equal to the value of the property conveyed. *Morrow–Thomas, Inc. v. Harris,* 466 S.W.2d 323 (Tex.Civ.App.1971). The satisfaction of an antecedent debt is "valid consideration." *Quinn v. Dupree,* 303 S.W.2d 769 (Tex.1957). "Fair" consideration may consist of the payment of an affiliated company's pre-existing debt. *Owen v. Vibrosearch Exploration,* 694 S.W.2d 421, 424 (Tex.App.—Houston (14th Dist.) 1985).

What is "fair" consideration is a fact question. In this case, plaintiffs were able to enter into a revolving loan agreement that would allow them to withdraw funds for acquiring inventory and financing the daily operations of their Remco franchises. Separately, they would not have qualified for this optimal financing arrangement. They were able to pay off all their antecedent loan agreements and work with only one major secured creditor, which extended a loan based on their consolidated financial statement. The court finds that the consideration here was "fair."

The court need not reach the issue of the solvency of each plaintiff under § 24.03 since it has been determined that: 1) they comprise a single business entity; and 2) they each received "fair" consideration as required for incurring the cross-collateralization and cross-guarantee provisions of the November, 1986 Loan Agreement.

Based upon the foregoing Findings of Facts and Conclusions of Law, the court renders judgment for defendant denying the plaintiff's requested relief to declare the transfers as void and cancel all instruments evidencing the transfers, and granting defendant's prayer to affirm its security interests and the general obligation arising from all loans made to plaintiffs. A separate Judgment will be entered by the court pursuant to these Findings of Facts and Conclusions of Law.