**In re CAREERCOM CORPORATION, et al, Debtors.**

**CAREERCOM CORPORATION; MTA, Inc.; Watterson College, and Harris & McKinney Management, Inc., Plaintiffs,**

v.

**U.S. DEPARTMENT OF EDUCATION, Defendant.**

**Bankruptcy No. 1–92–02696. Adversary No. 1–94–00427A.**

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 15, 1997.

## MEMORANDUM

ROBERT J. WOODSIDE, Chief Judge.

### Procedural History

On December 15, 1994, the Plaintiffs/Debtors above-captioned filed this adversary proceeding to recover allegedly preferential payments made to the United States Department of Education (DOE). On January 2, 1995, the DOE answered, raising affirmative defenses of contemporaneous exchange for new value and payment in the ordinary course of business.

Pursuant to the Uniform Fraudulent Conveyance Act (UFCA), 37 Pa.C .S.A. §§ 351 *et seq.* and 11 U.S.C. § 544, the Plaintiffs/Debtors seek the return of liabilities and fines paid to the DOE. They also seek the return of these funds pursuant to 11 U.S.C. §§ 547, 548 and 549.

The parties filed a Joint Statement of Undisputed Facts, cross Motions for Summary Judgment and Memoranda in Support thereof. I held a hearing and heard oral argument on these matters, which are now ripe for decision. I have jurisdiction pursuant to 28 U.S.C. § 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(F).

### Factual Findings

CareerCom, Inc. is the parent corporation of numerous for-profit post-secondary learning institutions and trade schools, including those involved as Plaintiffs in this proceeding: MTA, Inc. (MTA), Watterson College, Inc. (Watterson), and Harris & McKinney Management, Inc (H & M).

The DOE manages the Department of Education Payment Management System (DEPMS), the central repository for payments of federal grants to post-secondary institutions and trade schools.

Pre-petition, MTA, Watterson and H & M received funding from the DEPMS. This funding would be paid into a consolidated account managed by CareerCom from which all subsidiaries' payables were paid.

CareerCom kept a separate accounting for each subsidiary; but if a subsidiary's account fell below a zero balance, funds would be paid out of the other sub-accounts to pay the insolvent subsidiary's bills.

On or about the following dates, the DEPMS received payment on monetary fines and repayment liabilities assessed against MTA, Watterson and H & M for failure to comply with certain program regulations:

| Date | Payor Institution | Amount | Type |
|---|---|---|---|
| 9/24/92 | H & M | $25,000.00 | Fine |
| 9/24/92 | Watterson | 7,500.00 | Repayment |
| 9/24/92 | Watterson | 10,000.00 | Repayment |
| 10/1/92 | H & M | 7,000.00 | Fine |
| 9/15/92 | Watterson | 7,725.00 | Repayment |
| 9/15/92 | Watterson | 10,226.00 | Repayment |
| 10/6/92 | MTA | 427.00 | Repayment |
| 11/3/92 | Watterson | 1,197.00 | Repayment |
| 11/19/92 | Watterson | 673.00 | Repayment |
| 12/29/92 | Watterson | 2,000.00 | Fine |

At the time of these payments, CareerCom was insolvent, but certain subsidiaries, such as Watterson, had a net positive balance in the commingled account.

The submission of payment of the fines and assessments to DEPMS allowed Career-Com and its subsidiaries to continue to receive advance payments of grants from DEPMS.

If CareerCom had not paid the fines and assessments, DEPMS would have placed Ca-reerCom and all of its subsidiaries into a program of reimbursement funding.

Reimbursement funding would have required CareerCom and its subsidiaries to first pay eligible students the grants to which they would be entitled under DEPMS regulations and then to seek reimbursement from DEPMS.

The reimbursement process involves additional costs to an institution for administrative personnel to process the documentation that DEPMS requires.

By paying the fines, CareerCom and its subsidiaries could continue to receive DEPMS funds without these additional administrative costs.

During the period between the assessment of the fines and the first day of the ninety day preference period, DEPMS provided student aid funds to CareerCom and its subsidiaries totaling $3,342 000.00. A breakdown of payments made and aid received for each Plaintiff follows:

| | Fines and Repayments | Aid |
|---|---|---|
| MTA | $ 427.00 | $ 46,000,00 |
| Watterson | $36,221.00 | 0.00 |
| Harris & McKinney | $32,000.00 | $1,648,000.00 |

### Discussion

This action, under 11 U.S.C. §§ 544, 547, 548 and 549, seeks to regain for the Plaintiffs/Debtors' respective bankruptcy estates fines and repayments made from CareerCom corporation's bank account for all its subsidiaries. The matter is before me on cross Motions for Summary Judgment, a procedural device used to avoid unnecessary trial by allowing court to dispose of a case in those situations where pleadings depositions, answers to interrogatories, admissions and affidavits are sufficient to eliminate any genuine issue of material fact. *In re Miller,* 154 B.R. 987 (Bankr.N.D.Fla.1993). Having considered this matter based on the pleadings, briefs, and the Joint Stipulation of Material Facts, and resolving in favor of the Plaintiffs/Debtors all reasonable doubts as to material facts, I conclude that the Department of Education is entitled to judgment as a matter of law. *Id.*

### Preference Theory of Recovery

11 U.S.C. § 547(b) allows the estate to recover payments made (1) within 90 days before the Petition (2) against antecedent debt (3) if the debtor was insolvent and (4) if that payment would give the creditor more than what he would get in a Chapter 7. 11 U.S.C. § 547(c) limits the scope of § 547(b) by prohibiting avoidance of payments that would otherwise meet § 547(b)'s criteria if (1) those payments were part of a contemporaneous exchange for new value given to the debtor and (2) the new value was in fact given.

Bankruptcy principally aims to give the debtor a fresh financial start while allowing creditors to share equally, to a fair and equitable extent, in the debtor's accumulated assets that form the bankruptcy estate. This broad objective and its constituent

goals are undermined by pre-and post-bankruptcy transfers of property that unfairly or discriminatorily withhold or rob property from the estate to the prejudice of the debtor or her creditors. To remedy this ... the Code ... provides for avoidance....

Epstein, Nickles, and White, *Bankruptcy*, Vol. 1, p. 497–498 (West 1992).

■■■] The Plaintiffs/Debtors' case avers that when CareerCom paid $78,900.17 in fines (for record-keeping irregularities) from a commingled bank account in order to remain on DOE's advance payment roster, it unfairly or discriminatorily robbed funds from their estates to the detriment of their creditors. The DOE avers, *inter alia*, that such payment is not avoidable as a preference because new value was given for it, namely some $3.3 million in advance funding. I agree.[1] CareerCom paid Education $78,-900.17 in return for which it and all of its subsidiaries received $3.3 million. If one does not call it "new value" when one gives out $78.90 and gets back access to $3,300.00, one's idea of "new value" is painfully misconceived.

The Plaintiffs argue that because payments were made from the commingled bank account of both solvent and insolvent subsidiaries, new value was not received as to the insolvent subsidiaries. They also argue that because Education cannot prove that it in fact would have withdrawn the advance funding if CareerCom had not paid its fines, it cannot in fact say that the advance funding was "new value" exchanged for the fines. Neither of these arguments are persuasive.

### The Commingled Accounts

The parties agree that MTA and CareerCom were insolvent[2] during the ninety days before the petition was filed. They dispute whether Watterson and/or H & M were insolvent. I find this dispute irrelevant in light of the admission that the parent corporation was insolvent and all subsidiaries' debts were paid from a combined account held by the parent corporation.

The Plaintiffs argue that since Watterson was assessed no fines it would have continued to received DEPMS funding regardless of whether CareerCom paid the other school's fines or not. Therefore, they argue, Watterson did not receive new value in return for funds paid out of its solvent "portion" of the combined account. This argument ignores both the fact that Watterson was not an independent entity receiving funds directly from DEPMS and the fact that if CareerCom had not paid the fines CareerCom would not have received the advance funding. If CareerCom had not received the advance funding, Watterson would not have received it either.

The evidence provides a breakdown of CareerCom's payments to DEPMS—i.e. what amounts were taken from any given subsidiary's fund to pay DEPMS fines. CareerCom argues that DEPMS bears the burden of proving that when it received payment of the fines from a subsidiary, it gave back fair consideration to that particular subsidiary.

The parties dispute Watterson's state of solvency at the time of the transfers to DEPMS. But they agree that if it had not been solvent, its debts would have been paid anyway out of the CareerCom commingled account, into which DEPMS funds were paid. Thus, by having the DEPMS funds paid into the commingle account, Watterson received value in the form of cash by which its parent corporation could subsidize its debt. Thus, Patterson, regardless of its balance sheet, received new value for its payment to DEPMS and so that payment is not voidable as a preference. *See Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d. Cir.1981) (If the giving of consideration to a third party confers an economic benefit upon the debtor, then the debtor's net worth has been preserved and creditors have no cause to complain.); *Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2d Cir.1979) (new value need not be direct benefit to subsidiary debtor who ultimately may partake of benefit indirectly.)

---

1. Because I agree wholly with DOE's "new value" argument, I will not address the numerous other theories of both recovery and non-recovery advanced by both parties.

2. "Insolvent" for these purposes means that cumulative debts exceed cumulative asset value.

The Plaintiffs also argue that there is no proof that the DEPMS would in fact have put them on reimbursement funding if they had not paid the fines and repayments. This argument is refuted by the Plaintiff's admission that they paid the fines without contest because of the impending financial doom to all subsidiaries if the DEPMS followed through on its "threats" to take them out of the advance funding program. Thus, this argument is also without merit.

### · *Fraudulent Conveyance Theory under Section 548*

11 U.S.C. § 548 provides, relevantly, as follows:

(a) The trustee may avoid any transfer ... made ... within one year before the ... filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and

(B)(1) was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer ...; [or]

(ii) was engaged in business or transaction ... for which any property remaining with the debtor was unreasonably small capital.

11 U.S.C. § 548(a)(2).

■ ] In the alternative to its theory that the fines and assessments were preferential payments to DEPMS, CareerCom asserts that these payments were fraudulent transfers. As with its preference theory, this assertion must fail because all subsidiaries, directly or indirectly, received new value in exchange for the transfers in question.

### *Fraudulent Transfer Theory Under Section 544(b)*

The trustee may avoid any transfer of ... property ... that is voidable under applicable law by a creditor holding an [allowed] unsecured claim....

11 U.S.C. § 544(b).

■ ] This section allows a Debtor In Possession to avoid any transaction that an unsecured creditor could have avoided under

state law. *Matter of Munford, Inc.*, 98 F.3d 604 (11th Cir.1996). To invoke this section, the Debtor In Possession must show that there was in fact a creditor in existence at the time of the transfers who could have avoided them under state law. *Schaps v. Bally's Park Place, Inc.*, 58 B.R. 581, 584 (E.D.Pa.1986) *aff'd*, 815 F.2d 695 (3d Cir. 1987). The Debtor In Possession must then make out all elements of avoidance necessary under state law.

■ CareerCom avers that there were two such creditors at the time of the payment of the fines. DEPMS does not appear to dispute this. The state law invoked by Career-Com is the Uniform Fraudulent Conveyance Act, 39 P.S. § 351–363, which provides as follows:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

39 P.S. § 354, Act of May 21, 1921, P.L. 1045.

CareerCom's argument here too must fail because it and all of its subsidiaries received a fair consideration in exchange for the payment of the fines. No legal argument can refute the fact that CareerCom and all of its subsidiaries paid out $78,900.17 in fines, in consideration of which they received some $3.3 million in grants.

For all of these reasons the Petition to Avoid will be denied in its entirety.